Albert J. KINAN, Plaintiff, Appellant,

v.

CITY OF BROCKTON, et al., Defendants, Appellees.

No. 88-1782.

United States Court of Appeals, First Circuit.

Heard April 3, 1989.

Decided June 2, 1989.

Rehearing and Rehearing Denied July 12, 1989.

---

Robert L. Hernandez with whom Marian L. Klausner was on brief, for appellant.

Frank A. Smith, III, with whom Karen M. Thursby and Herlihy & O'Brien were on brief, for appellees City of Brockton and Edward F. Cronin.

Gerard S. McAuliffe with whom McParland & McAuliffe was on brief, for appellees Philip Sullivan, Walter Carlson, Joseph Dodero and John Kane.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiff, Albert J. Kinan, sued the City of Brockton, Massachusetts and several of its police officers pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the first, fourth, fifth and fourteenth amendments to the United States Constitution. He also alleged pendent state claims under the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12, § 11I, the Massachusetts Tort Claims Act, Mass.Gen.L. ch. 258, and under Massachusetts common law for assault and battery, false arrest, false imprisonment, malicious prosecution and intentional infliction of emotional distress. The police officers sued included former Chief of Police, Edward F. Cronin, Lieutenant Philip F. Sullivan, Sergeant W. Carlson and Officers John Kane and J.E. Dodero.[1]

At the close of plaintiff's evidence, the district court directed verdicts for Cronin, Carlson and Dodero on all counts. A directed verdict for Sullivan was ordered on

1. Two other officers were named as defendants in the complaint but were dismissed prior to trial.

the counts of false arrest, false imprisonment and assault and battery. In the case against Kane, the court directed a verdict on the malicious prosecution count.

At the close of all the evidence the court directed a verdict for Sullivan on the counts of malicious prosecution and intentional infliction of emotional distress.

The jury was asked to make the following determinations:

(1) Whether defendant Kane was liable under 42 U.S.C. § 1983, the Massachusetts Civil Rights statute, and/or the Massachusetts common law for assault and battery, false imprisonment and intentional infliction of emotional distress.

(2) Whether defendant Sullivan was liable under 42 U.S.C. § 1983 and/or the Massachusetts Civil Rights statute.

(3) Whether defendant City of Brockton was liable under 42 U.S.C. § 1983, the Massachusetts Civil Rights statute, and/or was negligent under the Massachusetts Tort Claims Act.

The jury returned verdicts finding that none of the defendants were liable on any counts. Plaintiff has appealed. We affirm. The issues before us encompass the exclusion of certain evidence, the directed verdicts for defendants Carlson, Dodero and Sullivan, and the jury instructions.[2]

## I. THE FACTS

On the night of December 6, 1980, plaintiff and two friends, Billy Hunnewell and Jose Avelar, were "cruising around." the Brockton area in plaintiff's 1968 red Mustang. Plaintiff and Avelar were 18; Hunnewell was either 18 or 19.

At some time, plaintiff picked up three male hitchhikers, all of whom appeared to be younger than 18. The hitchhikers sat in the back seat with Hunnewell. They asked him to purchase liquor for them and gave him $9 for that purpose. Hunnewell was not of legal liquor-purchasing age, and plaintiff knew it. Hunnewell asked plaintiff to stop at a parking lot adjacent to a liquor store. The hitchhikers and Hunnewell got out of the Mustang, whose engine remained running. Hunnewell went into the liquor store. The hitchhikers stood near another store. It is disputed as to how close to the Mustang they were. Hunnewell returned to the car without having purchased any liquor, got in and said "let's go." As the car drove off leaving the hitchhikers behind, Hunnewell laughed and gave plaintiff and Avelar $2 each. One of the hitchhikers, David Luke, noted the license plate number of the Mustang and called the Brockton Police Department. The Brockton police log shows that a call reporting an armed robbery in progress was received about the time Luke made the telephone call.

Defendant Kane and his partner, Thomas Crowley, who died prior to trial, were on patrol in a Brockton Police cruiser at this time. They were dispatched to the scene. Kane was the driver of the cruiser. Crowley questioned the three hitchhikers. There is a dispute as to where the questioning took place—either outside the cruiser with the youths standing next to the lowered passenger seat window or inside in the back of the cruiser. Crowley did the questioning and Kane heard all or most of the interrogation and response. The hitchhikers claimed that they had been robbed by plaintiff and his two companions at knife point. A description of the car, its occupants, and the Mustang's license plate number was given to Crowley and Kane.

The questioning of the hitchhikers was completed in a short time. Kane then made a general broadcast call from the cruiser requesting that the occupants of the red Mustang be stopped and held on a complaint of armed robbery. About a half an hour later plaintiff and his companions, who were then in the neighboring town of Stoughton, were stopped at gun point by a Stoughton police officer in a cruiser. There is a dispute as to whether the broadcast made by Kane was or could have been received by the Stoughton police. We will

**2.** No appeal has been taken from the directed verdict for former Police Chief Edward Cronin on all counts, nor has the directed verdict for defendant Kane on the count of malicious prosecution been appealed.

assume that Officer Kane's broadcast was picked up by the Stoughton police.

The occupants of the Mustang were ordered out of the car and told to lie stomach down on the ground. As plaintiff attempted to put the car in park, he was punched in the nose by the Stoughton police officer and then bitten on the arm by a police dog. More Stoughton police officers arrived on the scene. They repeatedly asked plaintiff, "Where's the piece?" Plaintiff and his companions were thoroughly searched. The police pulled the Mustang's trunk apart, cracked the dashboard, pulled out the console and speakers and searched under the rug. Plaintiff and his companions were subjected to verbal abuse. He and the other two youths were handcuffed with their hands behind their backs. Plaintiff was pulled off the ground by his hair. He and his companions were then taken to the Stoughton police station. When plaintiff requested help to stop his arm from bleeding, which it had done continuously since he was bitten, he was given a dry paper towel.[3]

Officers Kane and Crowley subsequently arrived at the Stoughton police station. The three youths were turned over to the Brockton officers who handcuffed them and drove them to the Brockton police station. Defendant Sullivan was a lieutenant and the supervisor on duty. Defendant Dodero was the booking officer who processed plaintiff. Defendant Carlson was a sergeant and was present at the police station; he had supervisory authority over Officers Kane and Crowley. Plaintiff was booked, fingerprinted and photographed. The facts as to what happened subsequently are hotly disputed. We set forth plaintiff's version first and then defendants'.

Plaintiff alleges that he was mistreated by the Brockton Police Department. He claims that he was not advised of the charges on which he was arrested and that the Miranda warnings were not read to him. When confronted at trial with a signed form indicating that the Miranda warnings had been read to him, he testified that he did not know what he was signing. Although he was still bleeding from the dog bite and repeatedly asked to be taken to the hospital, no medical treatment was given plaintiff. The police required plaintiff to remove all his clothing.

Defendant Sullivan's testimony as to what took place at the police station differed sharply from that of plaintiff. Sullivan testified that he told plaintiff that he was charged with armed robbery and plaintiff was orally given the Miranda warnings. He asked plaintiff if he wanted to go to the hospital. Plaintiff declined because it would cost him an extra $5 for bail recognizance; after midnight the clerk's fee for bail recognizance increased from $15 to $20. Plaintiff was not required to remove all his clothes; he took off only his shirt.

The balance of the facts are not in serious dispute. After about an hour, plaintiff was released from custody on his personal recognizance upon payment of the $15 bail commissioner's fee. He and Avelar walked to Brockton Center and then took a cab to the hospital where his dog bite wound was closed by stitches. He returned the next day for treatment of his nose injury.

Shortly after the three youths were booked at the Brockton police station, William Hunnewell, the father of Billy, came to the station. Hunnewell, Sr. was a detective sergeant on the Stoughton Police Department. After talking to his son, Hunnewell met with Officer Crowley and Lieutenant Sullivan. Sullivan directed Crowley to continue the investigation relative to the charges against plaintiff, Billy Hunnewell and Avelar. After questioning the three hitchhikers again, Crowley reported that: there had been no knife point robbery; $9 was given to plaintiffs and his companions to buy beer for the hitchhikers; the money was kept by plaintiff and his companions; the hitchhikers did not want to press charges; they wanted their money returned; and plaintiff and his two companions were willing to return the money and not press counter-charges. Sullivan then wrote a memo to "Records" dated Decem-

---

**3.** Although the jury was not privy to it, the record shows that there was an out-of-court settlement in the case plaintiff brought against the Stoughton Police Department.

ber 7, 1980, to be signed by Crowley. The memo stated: "To: Records from Officer T. Crowley, date: 12/7/80, re: Armed robbery. Further investigation shows no crime committed. Could you be sure this supplement reaches the Court along with the arrest reports on 12/8/80."

The memo notwithstanding, Lieutenant Dufresne of the Brockton Police Department brought a criminal complaint for armed robbery on December 8, 1980 against plaintiff and he was arraigned on the charge the same day. On December 26, 1980, the Brockton District Court found no probable cause for the complaint.

There is no evidence that any of the defendant officers used excessive physical force against plaintiff or verbally abused him. The only officers who touched plaintiff were Kane and Crowley. They did so in the process of handcuffing him and transporting him to the Brockton police station.

Since December 6, 1980, plaintiff has been convicted three times for receiving stolen property. He was not sentenced to jail on any of these offenses. A psychiatrist, who testified for plaintiff, was of the opinion that these crimes resulted from the treatment he received at the hands of police in December of 1980.

Other relevant facts will be included in our discussion of the issues.

## II. THE EVIDENTIARY EXCLUSIONS

Plaintiff assigns error to the exclusion of evidence of two prior civil rights actions against the City of Brockton and of an internal affairs investigation of the events of December 6, and 7, 1980.

### A. *The Civil Rights Actions*

Plaintiff claims that evidence of the two civil rights actions was relevant proof that Brockton "had a custom or policy of allowing the deprivation of constitutional rights of citizens." Plaintiffs Brief at 13. The contours of municipal liability are now pretty firmly established. A city is liable under 42 U.S.C. § 1983 if the injury results from an officially sanctioned policy or custom, but is not liable under the doctrine of *respondeat superior* for the aberrant and unpredictable behavior of its employees. *See City of Canton v. Harris,* — U.S. ——, 109 S.Ct. 1197, 1203–04, 103 L.Ed.2d 412 (1989); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479–81, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986); *Oklahoma City v. Tuttle,* 471 U.S. 808, 817–18, 821, 105 S.Ct. 2427, 2432–33, 2435, 85 L.Ed.2d 791 (1985); *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978); *Bordanaro v. McLeod,* 871 F.2d 1151, 1155 (1st Cir.1989).

Plaintiff's primary theory of liability is that the radio call sent out by Officer Kane requesting that the occupants of the Mustang be stopped and held on a complaint of armed robbery triggered the treatment received by plaintiff at the hands of the Stoughton police officers. He contends, and there is expert testimony to this effect, that the use of the words "armed robbery" would result in the police receiving the call to consider the suspects to be armed and dangerous. They would, therefore, respond with weapons drawn and be ready to use a greater level of force than if the words "armed robbery" had not been used. It was the opinion of plaintiff's expert, a former Boston Police Commissioner, that the broadcast as worded amounted to reckless police conduct and was the result of inadequate training and supervision of Brockton police officers.

It was also the expert's opinion that it was improper for the police to continue the prosecution of the plaintiff after it was learned that no armed robbery had actually occurred. The expert also attributed this to inadequate training and supervision.

In *City of Canton v. Harris,* 109 S.Ct. 1197, the Court addressed the question of whether "a municipality can ever be held liable under 42 U.S.C. § 1983 for constitutional violations resulting from its failure to train municipal employees." *Id.* at 1200 (footnote omitted). The Court held:

the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.

*Id.* at 1204 (footnote omitted).

■ We now turn to the specific actions excluded from evidence. The case of *Chief Red Blanket, et al. v. Sullivan,* was filed in federal court in 1981. It was brought against Sullivan (the same Sullivan that is a defendant in the instant case), other Brockton police officers and the City of Brockton. Plaintiffs asserted causes of action pursuant to 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986 and the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12, § 11I. Plaintiffs claimed, *inter alia,* that the City of Brockton had a policy or custom which permitted police officers to use excessive force against citizens, that Sullivan was responsible for the use of excessive force against the plaintiffs, and that Sullivan and the then Chief of Police, James Cody, failed to properly train, instruct and control the other defendant police officers. An agreement for judgment dated September 14, 1984 provided that judgment should enter for the plaintiffs in the amount of $100,000 against the city on counts 10 and 15 and that all other counts against the city and the other defendants were to be dismissed with prejudice. Count 10 alleged improper training, supervision and control by Sullivan and Cody. Count 15 alleged failure to train, instruct, supervise and control by Cody. Sullivan was not mentioned in count 15.

The second case is *Sallaway v. Sullivan.* In addition to Sullivan, other police officers were named as defendants including Chief of Police Cody. The complaint is dated February 4, 1982. It was brought pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and the Massachusetts Civil Rights Act, Mass. Gen.L. ch. 12, § 11I. The gist of the complaint was unlawful arrest and excessive use of force,

taken pursuant to a de facto policy of the City of Brockton, which is implemented by Police Officers of the City of Brock-

ton, to summarily punish persons who annoy, offend, or refuse to obey police orders, whether lawful or not, by means of unlawful arrest, detention, and excessive use of force.

Complaint, para. 37. An agreement for judgment was entered providing that judgment would be entered for "the plaintiff in the amount of thirty thousand dollars ($30,-000), without costs, and judgment satisfied against the City of Brockton only."

The court excluded evidence of both cases on the following grounds:

what we have here, when you get right down to it, at best is a mistake with respect to a crime that precipitated this entire matter and I don't think any evidence relating to the deprivation of constitutional rights caused by excessive force or by police brutality is relevant, and, if it has any relevance, it's just too prejudicial and my ruling is that I will not allow it.

The testimony of witnesses in both cases was also excluded.

We note initially the general rule that "a trial court's rulings on relevance and admissibility will not be disturbed unless there is an abuse of discretion." *United States v. Beltran,* 761 F.2d 1, 11 (1st Cir. 1985); *see also United States v. Mateos–Sanchez,* 864 F.2d 232, 235–36 (1st Cir. 1988). We find no abuse of discretion. Moreover, introducing evidence of the two other cases would inevitably result in trying those cases, or at least portions of them, before the jury. The merits of the two other cases would become inextricably intertwined with the case at bar. The result would be confusion and the consumption of a great deal of unnecessary time. And although the complete procedural history of the two cases is not in the record, it is obvious that both were settled prior to verdict. The cases were decided on the basis of negotiations, not findings of fact. The considerations leading to a settlement are many and varied; at times they have little to do with the basic facts of a case. These two cases, therefore, cannot be used to prove custom or practice. Finally, we agree with the district court that whatever

remote relevancy the cases had on custom or practice was outweighed by the potential for prejudice. Fed.R.Evid. 403. We are not faced with a series of cases making similar claims and alleging similar facts as those in the case at issue. The two cases that plaintiff sought to introduce focused on the excessive use of force. They were not relevant to the issue here, the effect of an allegedly improper broadcast.

### B. The Internal Affairs Investigation Report

■ Almost two years after the incident, the then Brockton Police Chief, Edward F. Cronin, ordered an in-house investigation of what occurred on December 6 and 7, 1980. The investigation was precipitated by a notice letter from plaintiff's attorney pursuant to Mass.Gen.L. ch. 258, § 4.[4] The report concluded that the police officers involved—all defendants in this suit—acted appropriately under the circumstances and that there was no wrongdoing by the Brockton Police Department.

As we understand it, plaintiff makes two arguments for the admissibility of the Internal Affairs investigation report. First, that it would prove a policy on part of the city of ratification of civil rights abuses by the police department. It is difficult to comprehend how a report finding no wrongdoing by the police would prove a city policy of ratification of civil rights abuses. Presumably this no-fault report would become evidence of condonation of improper police behavior if the jury found, contrary to the report, that the police officers had in fact violated plaintiff's civil rights. Since the jury did not make such a finding, if there was error, it was harmless.

Plaintiff's second argument follows the same convoluted reasoning as the first. He contends that the exclusion of the investigative report prevented him from presenting evidence concerning his constitutional

claim against Chief Cronin, as the principal policymaking law enforcement official of the City. A municipality can be held liable if its police chief is a policymaker and acquiesces in a police custom or policy as to which he has actual or constructive knowledge. *See Bordanaro v. McLeod,* 871 F.2d 1151, 1157 (1st Cir.1989); *Spell v. McDaniel,* 824 F.2d 1380, 1386–88 (4th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988); *Voutour v. Vitale,* 761 F.2d 812, 820 (1st Cir.1985); *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir.1984) (en banc); *Bennett v. City of Slidell,* 728 F.2d 762, 768 (5th Cir.1984), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). But here, Cronin was not Chief of Police at the time the radio call was made and there is no evidence suggesting that he was a policymaker at that time. We fail to see how an investigation ordered by Cronin two years after the incident concluding that there was no police misconduct would be evidence of Cronin's liability as a policymaker.

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *Oklahoma City v. Tuttle,* 471 U.S. at 823–24, 105 S.Ct. at 2436–37. There was no evidence of any other broadcasts of the type made by Officer Kane on December 6, 1980. The record is barren of evidence that Kane's broadcast followed a pattern or custom established by the police department. Nor is there any evidence that Cronin had anything to do with this broadcast or the police department policy concerning broadcasts in general. The evidence of the police department internal affairs investigation and report was properly excluded.

---

4. Mass.Gen.L. ch. 258, § 4 provides in pertinent part:

A civil action shall not be instituted against a public employer on a claim for damages under this chapter unless the claimant shall have first presented his claim in writing to the executive officers of such public employer within two years after the date upon which the cause of action arose, and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail, or as otherwise provided by this section.

## III. THE DIRECTED VERDICTS

The standard of review in this circuit has been stated as follows:

> In reviewing a directed verdict for the defendants, we view the evidence and all reasonable inferences in the light most favorable to the plaintiff. The question is whether when the evidence is seen in this light, there is but one conclusion as to the verdict that a jury reasonably could reach. *Goldstein v. Kelleher*, 728 F.2d 32, 39 (1st Cir.), *cert. denied*, 469 U.S. 852, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984).

*Kuras v. International Harvester Co.*, 820 F.2d 15, 17 (1st Cir.1987).

### A. *Officer Sullivan*

■ Plaintiff asserts that the court erred in directing verdicts for Sullivan at the close of plaintiff's evidence on the counts of false arrest, false imprisonment and assault and battery. Sullivan's liability on these three counts is posited on the theory that as a supervisor, he authorized the broadcast, was responsible for plaintiff's seizure and arrest by the Stoughton Police Department, and also was responsible for plaintiff's subsequent arrest by the Brockton Police Department and the events that followed. Plaintiff claims in effect that Sullivan, because of his supervisory position in the Brockton Police Department, was responsible for the broadcast made by Officer Kane and everything that happened to plaintiff subsequent to the broadcast.

Plaintiff's claims against Sullivan fail for lack of evidence of causation. The use of the words "supervision" and "control" cannot bridge a gap of missing facts. There is no evidence that Sullivan participated in the broadcast, knew of it, or authorized it. And there is no evidence that he had anything to do with broadcasts from cruisers or the police station. It was not error for the district court to direct verdicts on the counts of false arrest, false imprisonment, and assault and battery.

■ Plaintiff also assigns error to the court's directing verdicts at the close of all the evidence on the counts of malicious prosecution and intentional infliction of emotional distress. These are hand and glove counts, they go together. After plaintiff was booked at the Brockton police station on a charge of armed robbery, Sullivan ordered a further investigation. This resulted in a determination that no crime had been committed and a memo to that effect, dated December 7, 1980, was forwarded to the Brockton District Court. Despite the memo, another police supervisor, Lieutenant Dufresne, brought a criminal complaint of armed robbery against plaintiff the following day and the charge was not dismissed until December 26. Plaintiff contends that Sullivan's failure to follow through on the memo and see to it that the charges against him were dismissed promptly, constituted *prima facie* evidence of malicious prosecution. While Sullivan may have been negligent in not following up on the memo, this does not constitute evidence of malicious prosecution.

■ Even if we divorce the count of intentional infliction of emotional distress from that of malicious prosecution, the evidence is lacking. Sullivan's liability on the emotional distress count viewed alone, is predicated on plaintiff's testimony that Sullivan failed to advise him of the charges against him, failed to give him the Miranda warnings, refused plaintiff's request for hospital care, and ordered him to remove all his clothing. In order to establish liability for emotional distress under Massachusetts law, four elements must be established:

> It must be shown (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, Restatement (Second) of Torts § 46, comment i (1965); (2) that the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community," Restatement (Second) of Torts § 46, comment d (1965); (3) that the actions of the defendant were the cause of the plaintiff's distress, and (4) that the emotional distress sustained

by the plaintiff was "severe" and of a nature "that no reasonable man could be expected to endure it." Restatement (Second) of Torts § 46, comment j (1965). *Agis v. Howard Johnson Company,* 371 Mass. 140, 355 N.E.2d 315, 318–19 (1976) (citations omitted). Neither singly nor in combination does the evidence here meet this standard.

The district court did not err in directing verdicts for Sullivan on the counts of malicious prosecution and the intentional infliction of emotional distress.

### B. *Officer Dodero*

██ Dodero was the officer who booked plaintiff. The district court directed a verdict for him on all counts. We agree with the district court that Dodero's booking of plaintiff would not suffice for a finding of liability under any of plaintiff's theories.

### C. *Sergeant Carlson*

██ Plaintiff's theory of liability against Carlson is that as supervising sergeant he endorsed the report of Officer Crowley stating that the hitchhikers said that they had been robbed at knife point. It is plaintiff's contention that since there was evidence that the report was based on a reckless investigation, Carlson's endorsement of the report was sufficient evidence for finding him liable under 42 U.S.C. § 1983 and as a joint tortfeasor along with Officers Kane and Crowley. This overlooks one salient point. Carlson's signing of the report came after the fact; the broadcast had already been made. Whether Carlson endorsed the report or not made no difference. If the broadcast did in fact trigger plaintiff's arrest by the Stoughton Police, and the evidence on this is far from compelling, the chain of events had been set in motion before Carlson became a player. There was no causal connection between Carlson and any of plaintiff's claims against him. The district court did not err on directing a verdict for Carlson on all counts.

### IV. THE JURY INSTRUCTIONS

Our standard of review for jury instructions is described as follows:

A defendant is not entitled to any specific words of instruction, but only to instructions that properly convey the applicable law of the case. 9 C. Wright and A. Miller, *Federal Practice and Procedure: Civil* § 2556 (1971); *see Cupp v. Naughton,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); *Dyer v. Ponte,* 749 F.2d 84, 88 n. 5 (1st Cir.1984); *United States v. Morris,* 700 F.2d 427, 433 (1st Cir.1983)

*Kibbe v. City of Springfield,* 777 F.2d 801, 810 (1st Cir.1985), *cert. granted,* 475 U.S. 1064, 106 S.Ct. 1374, 89 L.Ed.2d 600 (1986), *cert. dismissed as improvidently granted,* 480 U.S. 257, 107 S.Ct. 1114, 94 L.Ed.2d 293 (1987). Based on our examination of the trial record, the instructions given and the objections to the instructions, we find that the court's instructions properly conveyed the applicable law under 42 U.S.C. § 1983, the Massachusetts Civil Rights statute, the Massachusetts Tort Claims Act, and regarding defendant Kane, the Massachusetts Common law for assault and battery, false imprisonment and intentional infliction of emotional distress. Nor do we find any error in the court's refusal to charge as requested on the liability of joint tortfeasors.

██ Plaintiff also alleges that the court erred in its instructions because it "usurped the factfinding role of the jury by making certain factual determinations regarding defendant Kane." Brief at 35. This circuit has been particularly rigorous in enforcing the strictures of Fed.R.Civ.P. 51, which provides in pertinent part: "No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." No specific objection was made by plaintiff to the alleged factfinding portion of the instructions. We, therefore, will not consider it. *See Linn v. Andover Newton Theological School, Inc.,* 874 F.2d 1, 4 (1st Cir.1989); *Jordan v.*

*United States Lines, Inc.,* 738 F.2d 48, 51 (1st Cir.1984); *Elwood v. Pina,* 815 F.2d 173, 175–76 (1st Cir.1987); *Joia v. Jo–Ja Service Corp.,* 817 F.2d 908, 919 (1st Cir. 1987).

We conclude by noting that since this case preceded *City of Canton v. Harris,* 109 S.Ct. 1197, it did not contain an instruction to the effect "that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* 109 S.Ct. at 1204. Because the charge as given on the liability of the city was more favorable to the plaintiff than the "deliberate indifference" standard now required under *City of Canton,* this error was harmless.

*Affirmed.*