**James ARLIO, Plaintiff–Appellee,**

v.

**Marlin J. LIVELY, Defendant–Appellant.**

**Docket Nos. 05–5779–cv(L); 05–5998–cv(CON).**

United States Court of Appeals, Second Circuit.

Argued: Oct. 24, 2006.

Decided: Jan. 17, 2007.

Karen Lee Torre, Law Offices of Karen Lee Torre, New Haven, CT, for Plaintiff–Appellee James Arlio.

James E. Coyne, Coyne, von Kuhn, Brady & Fries, LLC (Colleen D. Fries and Tyler M. Barhorst, on the brief), Stratford, CT, for Defendant–Appellant Marlin J. Lively.

Before: WINTER, McLAUGHLIN, and STRAUB, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Police officer James Arlio sued the Acting Chief of the Trumbull Police Department, Marlin Lively, in the United States District Court for the District of Connecticut (Arterton, J.) for violation of his First and Fourteenth Amendment rights. Arlio claimed that Lively, a Republican, suspended him on trumped-up charges because Arlio had the temerity to support local Democratic candidates for office. After trial, a jury found for Arlio and awarded him $250,000 in compensatory and punitive damages. Because we find that the district court abused its discretion by allowing into evidence irrelevant and prejudicial testimony concerning a state arbitration board's prior findings in Arlio's favor, we vacate and remand for a new trial.

As this case comes to us after a jury verdict, we view the facts in the light most favorable to Arlio, the prevailing party. See Kosmynka v. Polaris Indus., Inc., 462 F.3d 74, 77 (2d Cir.2006).

## BACKGROUND

In the fall of 1999, a contentious municipal election divided the police department of Trumbull, Connecticut. Seeking an edge in a tight race, Republican candidate for First Selectman Kenneth Halaby sought the official endorsement of the un-

ion representing Trumbull police officers. Instead, the union rebuffed Halaby and endorsed a local Democrat, allegedly for fear that, if elected, Halaby would install a political ally, Ann Moore, as police commissioner. Moore had antagonized Trumbull police in the past over the arrests of her children.

Nevertheless, Halaby prevailed and the union's fear soon came to pass. Moore was quickly appointed Chairperson of the Trumbull Board of Police Commissioners despite a complaint by police officers to the Town Ethics Commission. Moore then handpicked Lieutenant Marlin Lively to serve as Acting Chief of Police.

Lively presided over a department splintered along partisan lines. Officers known to be Democratic supporters claimed to suffer baseless disciplinary actions and arbitrary scheduling changes.[1] Indeed, seven detectives ultimately brought a separate action against Lively and Moore in the District of Connecticut for violation of their First Amendment rights to political expression. Those claims were settled out of court in January 2003.

Sergeant James Arlio was not a party to that suit. Arlio was a twenty-seven year veteran of the department and a shift supervisor. He had never been disciplined or accused of misconduct. Arlio aspired to make lieutenant, and had for some time competed in a rigorous civil service examination process. In February 2001, Arlio finally completed the written component and qualified to proceed to the oral test in April. His ambition was within his grasp. Unfortunately for Arlio, he was also a Democratic supporter and had been Vice–President of the union that had refused to endorse Halaby.

On the morning of April 13, 2001, Arlio was working the graveyard shift in the radio communications center at the police station. At around 4:30 a.m., Lively entered the building and proceeded directly to the hallway outside the communications room. The door was shut. Lively spotted Officer Targowski and beckoned him over. Lively asked Targowski to confirm his suspicion that snoring was coming from inside the communications center. Targowski responded that he heard no such thing.

Without opening the door to the radio room, Lively returned to his office and issued an order to fetch Arlio. When Arlio arrived, Lively suspended him for sleeping on the job, effective immediately. Arlio was given no opportunity to respond to the charge. Lively later furnished Arlio with a written notice of the suspension. Months later, a copy of that notice somehow worked its way onto the *Trumbull Times* news desk. The *Times* reported Arlio's alleged somnolence and resulting suspension, humiliating Arlio and his family.

The timely intervention of the police union allowed Arlio to take his lieutenant oral examination as scheduled. However, the union's deal with the city was reached only at the eleventh hour, leaving Arlio little time to study and prepare. Arlio failed. In the end, Arlio was suspended without pay for 22 days. He remains a sergeant.

After a frustrated attempt at pursuing relief through the union grievance process, Arlio filed a complaint with the State of Connecticut's Board of Mediation and Arbitration (the "Arbitration Board"). Arlio and Lively both testified and presented evidence at board hearings. The sole is-

---

1. Most spectacularly, Officer Edward Targowski was summarily suspended after Moore allegedly insisted that he tried to run her over with his cruiser in the police station parking lot. The timely observations of a jailhouse surveillance camera helped defuse the charge and led to Targowski's reinstatement.

sue in that proceeding was whether Lively had just cause to suspend Arlio under the union's collective bargaining agreement with the municipality.

The Arbitration Board ultimately agreed with Arlio and issued a written decision finding that Arlio's suspension was not for just cause and awarding him back wages. Feeling that his constitutional rights had also been violated, Arlio turned for redress to the federal courts.

## THE FEDERAL COURT PROCEEDING

In November 2003, Arlio sued Lively under 42 U.S.C. § 1983 in the United States District Court for the District of Connecticut, alleging that Lively unconstitutionally suspended him because of his political opinions in violation of the First and Fourteenth Amendments. He also pressed a state law cause of action for intentional infliction of emotional distress.

In April 2005, Lively made a motion in limine to exclude from evidence, *inter alia,* any mention of the prior arbitration proceeding where Arlio had prevailed. Lively argued that such evidence was: (1) irrelevant to Arlio's constitutional claims because the Arbitration Board's decision was limited to the propriety of Arlio's suspension under the union labor agreement; and (2) overly prejudicial because the jury would be strongly inclined to defer to a prior determination on the incident by an "expert" state agency.

At a pretrial conference, the district court initially suggested that the Arbitration Board's decision "just isn't relevant." The court, however, decided that the jury should know why Arlio was *not* seeking back pay (which had been awarded by the Arbitration Board). The court felt that withholding this information would just "invite [the jury] to speculate about the white elephant in the corner." Thus, the

court asked Lively to prepare a jury instruction explaining that back wages had already been awarded in the arbitration.

The district court ultimately found Lively's proposed jury instruction lacking. Now itself distracted by the "white elephant," the court permitted Arlio to testify about the arbitration proceeding and his damage award. Specifically, Arlio stated that he was awarded back pay and he added that the Arbitration Board had the power to determine that his suspension had not been for just cause. The court then provided the jury with a limiting instruction, noting that, while the Arbitration Board had revoked Arlio's suspension, it never addressed his constitutional claims.

At the close of evidence, Lively claimed qualified immunity as a state actor and moved for judgment as a matter of law. The court reserved decision.

The jury ultimately found for Arlio on all counts and awarded him $150,000 in compensatory damages and $100,000 in punitive damages. In September 2005, the district court denied Lively's renewed motion for judgment as a matter of law as well as his motion for a new trial.

Lively now appeals.

## DISCUSSION

 Lively presses two central contentions before this Court: (1) that the district court should be reversed and the action dismissed because he was entitled to qualified immunity as a government actor performing a discretionary function; *and* (2) that a new trial is required because the district court abused its discretion by admitting testimony regarding the Arbitration Board proceeding. While we find Lively's qualified immunity argument meritless, we agree with his second contention.

## I. *Qualified Immunity*

■ We review a denial of qualified immunity de novo. *Anderson v. Recore,* 446 F.3d 324, 328 (2d Cir.2006).

■ A district court should not grant judgment as a matter of law unless the evidence, viewed in the light most favorable to the nonmoving party, is insufficient to permit a reasonable juror to find in his favor. *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 289 (2d Cir.1998).

■ "Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995). Such actors are sheltered only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To ensure immunity, an official needed only an objectively reasonable belief that his actions were lawful at the time of the challenged act. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). This threshold is met if " 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon,* 66 F.3d at 420 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Lively claims that he is entitled to immunity because he had "more than a reasonable basis for his determination that Arlio was sleeping while on duty . . . and that he had authority therefore to suspend him." This might be compelling, but for one small problem: the jury disagreed.

We take the facts as the jury implicitly found them below. *Kosmynka,* 462 F.3d at 77. Arlio has always maintained that he was not sleeping on the job and that Lively hatched (and bungled) a sting to punish him for his politics. As the facts underlying Lively's qualified immunity defense remained in dispute, the district court properly allowed the case to proceed to trial. The jury clearly adopted Arlio's view of the facts in finding for him on all counts.

Nor was the jury's interpretation of the evidence unreasonable. The jury heard testimony on the bitter political struggle that had plagued the Trumbull police department since the 1999 election and the accompanying saga of recrimination and reprisal. Arlio detailed his spotless career. And Officer Targowski testified that he had not heard snoring coming from the communications center. Under these circumstances, it was perfectly reasonable for the jury to reject Lively's story. A defendant cannot raise an immunity defense upon a foundation of fanciful allegations that were, in fact, rejected by a reasonable fact finder.

As the evidence was clearly sufficient to permit a reasonable juror to adopt Arlio's view of the facts, Lively was not entitled to judgment as a matter of law on his qualified immunity defense.

## II. *Arbitration Testimony*

■ We review evidentiary rulings for abuse of discretion. *Caruolo v. John Crane, Inc.,* 226 F.3d 46, 54 (2d Cir.2000). However, a new trial should be granted only if a substantial right of a party is affected-as when a jury's judgment would be swayed in a material fashion by the error. *Costantino v. David M. Herzog, M.D., P.C.,* 203 F.3d 164, 174 (2d Cir.2000).

■ Lively claims that the testimony on the prior arbitration was both irrelevant and overly prejudicial.[2] We agree.

## A. *Relevance*

■ Evidence that is not relevant is not admissible. Fed.R.Evid. 402. "If an item of evidence tends to prove a fact that is of consequence to the determination of the action, it is relevant. If it does not tend to prove a material fact, it is irrelevant." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 401. 04[2][a], at 401–19 (2d ed.2006). "A material fact is one that would affect the outcome of the suit under the governing law." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 579 (2d Cir.2006) (internal quotation marks omitted).

Here, the district court agreed with Lively at the in limine hearing that the Arbitration Board's decision was irrelevant, since it was based solely on the particulars of the union collective bargaining agreement. It was not in any way an adjudication of Arlio's constitutional claims (nor could it be). However, Arlio ultimately convinced the district court that testimony about the arbitration was necessary to explain why he was *not* seeking back wages in the present federal suit. The court became troubled that, unless this issue was addressed, the question of back wages would become the proverbial "white elephant" in the room, distracting and confusing the jury. Thus, the court ultimately allowed testimony on: (1) the board's power to determine that a suspension was not

for just cause; *and* (2) its award of back pay to Arlio.

Although the connection between these two facts was assuredly not lost on the jury, the court made their nexus obvious in its limiting instruction when it noted that the arbitration hearing "resulted in a revocation of the suspension." Hence, solely out of concern about lost wages, the jury was told that an expert state board had already found Arlio's dismissal unlawful.[3]

This was an abuse of discretion. As the district court conceded, Arlio had *never* sought damages for lost wages in his federal case. He did not even mention lost wages in his complaint. Nor had Lively opened the door on this issue by arguing that Arlio was seeking a double recovery of those wages. *Cf. United States v. Carter*, 801 F.2d 78, 83 (2d Cir.1986) (defendant made evidence relevant by "opening the door"). Lost wages simply were not an issue in the federal proceeding, and thus legally could not "affect the outcome of the suit under the governing law." *Beth Israel Med. Ctr.*, 448 F.3d at 579 (internal quotation marks omitted). To open the doors of relevance so wide as to allow a plaintiff to recite facts concerning claims he is *not* making or damages he is *not* seeking would violate the spirit of the Federal Rules and "hamper rather than advance the search for truth." 2 Weinstein & Berger, *Weinstein's Federal Evidence* § 402.02[3], at 402–15; *see also* Fed. R.Evid. 401 advisory committee's note ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence

---

2. Lively does not contest the trustworthiness of the prior administrative findings under *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976). *See also* Fed.R.Evid. 803(8)(C).

3. For the first time on appeal, Arlio also suggests that the arbitration evidence was admissible because "the necessity of Board proceedings was itself an element of damage." We do not reach this issue because Arlio neither raised this theory in his complaint nor testified to this possibility at trial.

and a matter properly provable in the case.").

In sum, the district court admitted the evidence about the arbitration solely because it was probative of a non-material issue: why Arlio was *not* seeking back wages in the federal action. Thus, the testimony was not relevant and should have been excluded.

B. *Prejudice*

Even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. Accordingly, "[c]ourts are reluctant to cloud the issues in the case at trial by admitting evidence relating to previous litigation involving one or both of the same parties." 2 Weinstein & Berger, *Weinstein's Federal Evidence* § 403.05[3][b], at 403–66.2. Admitting evidence about previous cases "inevitably result[s] in trying those cases . . . before the jury," and "[t]he merits of the . . . other cases would become inextricably intertwined with the case at bar." *Kinan v. City of Brockton,* 876 F.2d 1029, 1034 (1st Cir.1989).

Even if the bounds of materiality could be stretched to encompass why Arlio was not seeking back wages—thus making the arbitration testimony relevant—the prejudicial effect of the evidence would still outweigh any probative value. Although the district court gave a limiting instruction indicating that the testimony should be considered only for the limited purpose of "what is and what isn't claimed for damages by the plaintiff," that same end could have been achieved simply by allowing Arlio to state that he was not suing for back pay. Instead, the district court permitted Arlio to testify at length about the arbitration proceeding and essentially informed the jury that Arlio's suspension was not for just cause.

This is a perfect example of when the "merits of other cases . . . become inextricably intertwined with the case at bar," *Kinan,* 876 F.2d at 1034, as the jury might have felt a strong compulsion to conform their verdict to the conclusion of the Arbitration Board "experts." *Cf. Costantino,* 203 F.3d at 174 (substantial right affected when jury may have been swayed by error in a material fashion). The allure of a prior expert adjudication must be strong for a jury. An expert body's determination that Arlio had been improperly suspended undoubtedly had an impact on the jury, despite any attempt by the district court to explain the legal distinction between the issues before the jury and those before the Arbitration Board. District courts must assiduously guard juries against the siren song of irrelevant and prejudicial prior determinations. The failure of the court below to discharge that responsibility require a new trial on the merits.

### CONCLUSION

We have examined Lively's remaining contentions and find them to be without merit. However, because the district court abused its discretion in allowing irrelevant and prejudicial testimony on a prior arbitration regarding plaintiff's suspension, the judgment of the district court is VACATED and the case REMANDED for a new trial.