*Earley v. Annucci*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of April, two thousand twenty.

Present:
> BARRINGTON D. PARKER,
> DEBRA ANN LIVINGSTON,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

_____

SEAN EARLEY,

> *Plaintiff-Appellee*,

v.                                                                 18-3739

ANTHONY J. ANNUCCI, Executive Commissioner and Counsel, New York State Department of Correctional Services,

> *Defendant-Appellant*,

Roxanne Underwood, Inmate Records Coordinator, Groveland Correctional Facility, Brian S. Fischer, Commissioner of the New York State Department of Correctional Services, in his official capacity and his unofficial capacity, Richard DeSimone, in his individual capacity and his official capacity as Associate Counsel in Charge of the Office of Sentencing Review of the New York State Department of Correctional Services, Lucien J. LeClaire, Jr., in his individual capacity, Glenn S.

1

Goord, in his individual capacity, Henry Lemons, Jr., in his individual capacity and his official capacity as Chairman and Chief Executive Officer of the New York State Division of Parole, George B. Alexander, in his individual capacity, Robert Dennison, in his individual capacity, Brion D. Travis, in his individual capacity, John and Jane Does 1-50, various training, supervisory and policymaking employees of the New York State Department of Correctional Services or the New York Division of Parole, in their individual capacities,

*Defendants*.

_____

For Plaintiff-Appellee:          JON P. GETZ, Vahey Muldoon Reston Getz LLP, Rochester, NY


For Defendant-Appellant:         JENNIFER L. CLARK, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General, New York, NY

Appeal from a judgment of the United States District Court for the Northern District of New York (Stewart, *M.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **REVERSED**, and the case is **REMANDED** to the district court with instructions to enter judgment for Defendant Anthony Annucci.

Defendant-Appellant Anthony Annucci ("Annucci") appeals from a November 15, 2018, decision and order awarding Plaintiff-Appellant Sean Earley ("Earley") $150,000 in compensatory damages for 202 days of incarceration stemming from the imposition of a term of post-release supervision that had not been judicially pronounced, arguing, *inter alia*, that he is entitled to qualified immunity. The decision followed the district court's (Scullin, *J.*) prior denial of summary judgment on the basis of qualified immunity. This Court reviews a denial of qualified

2

immunity de novo. *Arlio v. Lively*, 474 F.3d 46, 51 (2d Cir. 2007). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

Earley's case has a long history before this Court. Earley is one of many individuals affected by the policy of the New York State Department of Correctional Services ("DOCS")[1] of administratively adding terms of post-release supervision ("PRS") to the determinate sentences of defendants in the New York state court system. This practice began in the wake of a sentencing reform statute passed by the New York State legislature in 1998, which required determinate sentences to be followed by a period of PRS, but did not mandate that state court judges pronounce the PRS term at sentencing. *See* N.Y. Penal Law § 70.45(1). DOCS subsequently began unilaterally calculating and imposing PRS terms in cases where the sentencing judge had not imposed the statutorily required term of PRS. In 2006, Earley's habeas petition challenging this practice culminated in the seminal case *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006) ("*Earley I*"), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006) ("*Earley II*"), which deemed the administrative imposition of PRS unconstitutional.

The instant appeal arises from a subsequent 42 U.S.C. § 1983 lawsuit filed by Earley against officials including Annucci, who was the Deputy Commissioner and Counsel of DOCS during the relevant time period. Annucci challenges the district court's award of $150,000 in compensatory damages, arguing, *inter alia*, that he is entitled to qualified immunity.[2] We agree.

---

[1] DOCS and the New York State Division of Parole ("DOP") merged in 2011 to become the New York State Department of Corrections and Community Supervision ("DOCCS"). For all relevant years in this appeal, however, the agencies operated separately.

[2] Earley contends that Annucci's arguments as to qualified immunity were waived on appeal because they were belatedly raised. Even assuming *arguendo* that Annucci waived any arguments as to qualified immunity, because the defense requires the application of law to already-developed facts, we exercise our discretion to reach the issue. *See Bogle–Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006).

This Court will grant qualified immunity to government officials on summary judgment unless "(1) the facts taken in the light most favorable to the officials establish a violation of a constitutional right; and (2) the officials' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Betances v. Fischer*, 837 F.3d 162, 171 (2d Cir. 2016) (internal quotation marks, alterations, and citation omitted). Because our prior decision in *Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013), already determined that the relevant law was clearly established as of *Earley I*, *see id.* at 168, our only inquiry is "the objective reasonableness of Annucci's efforts to relieve [Earley] of the burdens of [his] unlawfully imposed [PRS] term[] after he knew it had been ruled that the imposition violated federal law," *id.* at 177.

The district court, adopting the report and recommendation of the magistrate judge, considered that question to have been resolved by this Court's decision in *Betances v. Fischer*, which found that Annucci's efforts to bring DOCS into compliance with *Earley I* were "unreasonably delayed," 837 F.3d at 172, such that he was not entitled to qualified immunity in *Betances* and similar cases, *see, e.g.*, *Reyes v. Fischer*, 934 F.3d 97, 100 (2d Cir. 2019); *Hassell v. Fischer*, 879 F.3d 41, 51 (2d Cir. 2018). However, because Earley is positioned differently than were the plaintiffs in those cases, *Betances* does not control here. To be sure, *Betances* concluded that Annucci unreasonably delayed the development and launch of large-scale initiatives to implement *Earley* across the entire population affected by administratively imposed PRS. *See* 837 F.3d at 172–73. However, that finding does not resolve the distinct question now before the court: whether Annucci acted unreasonably with respect to the provision of a remedy in Earley's case, in which this Court had directed a specific series of actions, the implementation of which was being actively litigated up until the time of his release.

We conclude that Annucci did not act unreasonably in failing to take additional steps to provide a more expeditious remedy to Earley. As this Court has previously held, *Earley I* created wide-ranging implementation obligations for Annucci in his position as a high-level DOCS policymaker; as to Earley himself, however, the opinion was much more explicit in its instructions. This Court directed as follows:

> [W]e vacate the district court's judgment and remand the case for that court to determine whether Earley's petition for a writ of habeas corpus was timely filed. Should the district court determine that the petition was timely, it is instructed to issue a writ of habeas corpus excising the term of post-release supervision from Earley's sentence and relieving him of any subsequent penalty or other consequence of its imposition. Our ruling is not intended to preclude the state from moving in the New York courts to modify Earley's sentence to include the mandatory PRS term.

*Earley I*, 451 F.3d at 76–77. This Court's instruction as to any potential release or resentencing of Earley was explicitly conditioned upon a threshold determination by the district court on remand that the petition was timely; only then was the district court directed to issue a writ of habeas corpus directing that the improper term of PRS be excised from Earley's sentence. This Court also explicitly affirmed that it was not precluding the possibility of a resentencing in which PRS would be judicially imposed as a component of Earley's sentence. Thus, *Betances*'s conclusion that "Annucci immediately understood *Earley I*'s holding but deliberately refused to change DOCS procedures to bring them into compliance," *Betances*, 837 F.3d at 167, is inapplicable in the instant case, where this Court had already delineated the next steps and had placed the initial burden for effectuating those steps on the district court, rather than on DOCS. Nothing about the Court's carefully cabined instruction can be read to create an affirmative and immediate duty for Annucci to take action in Earley's case, rather than wait for the natural progression of a judicial process which was still being actively litigated by the parties.

5

Moreover, as that judicial process unfolded, culminating in Earley's release, Annucci's lack of intervention remained entirely reasonable.   Following the denial of rehearing in *Earley II*, Judge Korman did not issue his opinion granting the writ of habeas corpus until almost a year later, on May 1, 2007, after having referred the question of the petition's timeliness to a magistrate judge for a report and recommendation.   *See Earley v. Murray*, 3-cv-3104, 2007 WL 1288031 (E.D.N.Y. May 1, 2007).   Even at that point, the writ was not yet in effect; instead, Judge Korman stayed the writ for twenty-eight days to permit the sentencing court to conduct a resentencing.   *Id.* at *3.   Six days later, on request of the District Attorney, who represented that he would not seek resentencing but would instead seek a stay pending appeal of the Second Circuit's decision in *Earley I* to the Supreme Court, Judge Korman replaced that twenty-eight day stay with a temporary stay permitting the District Attorney to apply for a stay pending appeal in the Second Circuit. This Court denied that stay on June 13, 2007, marking the first date on which an active writ of habeas corpus existed directing the excision of PRS from Earley's sentence.   Earley was released from custody without any term of PRS merely fourteen days later, on June 27, two days after the Supreme Court's denial of certiorari in the case.[3]   *See Burhlre v. Earley*, 551 U.S. 1159 (2007). This context makes clear that none of the remedial steps referenced in *Betances*, such as a review of files to identify inmates with administratively imposed PRS and a referral of such cases to district attorneys and sentencing courts, *see* 837 F.3d at 173, would have had any impact in Earley's case, where the District Attorney was already intimately involved at each step of the aftermath of the Second Circuit's decision.

---

[3] While Earley could conceivably have been released in fewer than fourteen days following this Court's denial of a continued stay, that modest delay is within the bounds of reasonableness and is not sufficient to subvert Annucci's entitlement to qualified immunity for his conduct in this case.

In sum, Annucci's failure to unilaterally seek release of Earley while the judicial process took its course was not unreasonable. While our prior cases have properly placed on Annucci the obligation of beginning efforts to expeditiously implement the holding of *Earley I* as soon as rehearing of that case was denied, he had no comparable duty to intervene in an ongoing case to seek a remedy that had not yet been officially granted and made effective by the district court. Accordingly, Annucci is entitled to qualified immunity for the entire time period referenced in Earley's Second Amended Complaint.

We have considered Earley's remaining arguments and find them to be without merit. Accordingly, we **REVERSE** the judgment of the district court and **REMAND** with instructions to enter judgment for the defendant.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7