INSURANCE RECOVERY GROUP, INC., Plaintiff,

v.

John CONNOLLY, Neil Salters, Jonathan Ladenheim, Steven Ieronimo and ISG Recoveries, LLC, Defendants.

Civil Action No. 11–10935–WGY.

United States District Court, D. Massachusetts.

Sept. 30, 2013.

Joseph M. Downes, III, Lawrence S. Delaney, Demeo & Associates, P.C., Boston, MA, for Plaintiff.

Joshua S. Bauchner, Barry B. Cepelewicz, D. Greg Blankinship, Meiselman, Denlea, Packmn, Carton & Eberz, P.C., White Plains, NY, for Defendants.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

## I. INTRODUCTION

Insurance Recovery Group, Inc. ("IRG") moves for sanctions against the law firm of Meiselman, Packman, Nealon, Scialabba & Baker P.C.[1] ("Meiselman" or the "Firm"), a present member of the Firm, D. Greg Blankinship ("Blankinship"), and an attorney formerly associated with the Firm, Joshua S. Bauchner ("Bauchner") (collectively, the "Defendants' Counsel") for allegedly counseling their clients to destroy evidence sought in connection with a business-raiding suit between the clients and IRG and, by so doing, violating court-issued discovery orders. IRG additionally urges this Court to compel the Defendants' Counsel to reimburse the costs and attorneys' fees that it incurred in related court and arbitration proceedings.

### A. Procedural Posture [2]

IRG filed this motion for sanctions against the Defendants' Counsel on September 6, 2012, and appended a memorandum in support. Mot. Sanctions Against Defs.' Att'ys, ECF No. 22; Mem. Supp. Mot. Sanctions Against Defs.' Att'ys ("IRG's Mem."), ECF No. 23. On November 2, 2012, the Defendants' Counsel submitted a brief in opposition to IRG's motion. Resp'ts' Mem. Law Opp'n Pl.'s Mot. Sanctions ("Defs.' Counsel's Opp'n"), ECF No. 44. IRG filed a reply brief on November 21, 2012, Reply Br. Supp. Mot. Sanctions Against Defs.' Att'ys ("IRG's

Reply"), ECF No. 52, to which the Defendants' Counsel responded with a sur-reply brief less than a week later, Resp't's Sur-Reply Mem. Law Opp'n Pl.'s Mot. Sanctions, ECF No. 55. After entertaining oral argument at a motion hearing held on November 26, 2012, the Court took the matter under advisement. Elec. Clerk's Notes, Nov. 26, 2012, ECF No. 54.

### B. Factual Background [3]

IRG is principally engaged in the business of providing recovery services to insurance companies and self-insured businesses seeking government reimbursement funds to offset some of the costs associated with administering workers' compensation programs. Notice Removal, Ex. A, Verified Compl. Injunctive Relief ("Compl.") ¶¶ 15, 19, ECF No. 1–2. Looking to expand into the areas of workers' compensation, automobile subrogation, and property subrogation, IRG entered into discussions with John Connolly ("Connolly") and Neil Salters ("Salters"), two gentlemen with a demonstrated record of experience working in the subrogation space, to explore the possibility of founding a business dedicated to the management and collection of subrogation claims. *See id.* ¶¶ 20–21. Following a period of negotiation, the parties formed such a business-named Insurance Subrogation Group ("ISG")—as a subdivision of IRG, with the prospective (though not definitive) intent eventually to spin the business off as a separately operating joint venture. *Id.* ¶¶ 26, 31. In exchange for receiving monthly consulting fees and executive positions at the new company, Con-

---

1. The law firm, formerly known as Meiselman, Denlea, Packman, Carton & Eberz P.C., underwent a name change during the pendency of this litigation.

2. Because prior proceedings comprise much of the factual background in this case, the procedural posture is presented in a truncated fashion here, limited to only those devel-

opments that have taken place since the commencement of this offshoot sanctions litigation.

3. The following facts-over which there is apparently no significant dispute-derive from the pleadings, briefs, affidavits, and exhibits supplied by the parties in this case.

nolly and Salters each signed consulting agreements which contained, among other provisions, clauses prohibiting the pair of consultants from making use of any of IRG's confidential information for improper purposes, competing directly or indirectly with IRG, soliciting any of IRG's clients, or otherwise acting contrary to IRG's interests. *See id.* ¶¶ 27–29. Two more consultants, Jonathan Ladenheim ("Ladenheim") and Steven Ieronimo ("Ieronimo"), were later hired to manage and support ISG's back office functions and signed consulting agreements with terms similar to those found in Connolly and Salters's agreements. *Id.* ¶¶ 25, 33.

Eventually, the business relationship between IRG and the consultants at ISG soured. IRG alleged that Connolly and Salters had secret talks with an outside investor to fund a breakaway from IRG, appropriated IRG's undisclosed claims and client information for personal gain, and diverted business to their new subrogation service company, ISG Recoveries, LLC ("ISG Recoveries"). *See id.* ¶¶ 72, 83, 93. Thus, on May 18, 2011, IRG filed an action against ISG Recoveries and Connolly, Salters, Ladenheim, and Ieronimo (collectively, the "consultants") (collectively, with ISG Recoveries, the "Defendants") in the Massachusetts Superior Court sitting in and for the County of Suffolk, *id.* at 36, which the Defendants removed to the District of Massachusetts just six days later.[4] Notice Removal, ECF No. 1. The Defendants retained Blankinship, Bauchner, and other Meiselman attorneys to represent

them in the litigation with IRG. *See* IRG's Mem. 1.

One week after submitting its complaint, IRG filed an emergency motion for a preliminary injunction to enjoin the Defendants from further violating the terms of their consulting agreements. Pl.'s Emergency Mot. Prelim. Inj., ECF No. 2. Then–Judge Gertner granted the motion on May 26, 2011, and issued a ten-day temporary restraining order ("TRO") against the Defendants. Elec. Order, May 26, 2011. In a preliminary injunction order inscribing the details of the TRO,[5] Judge Gertner wrote the following:

> Defendants . . . are hereby . . . .
>
> . . . .
>
> 2. Ordered, within twenty-four hours of the issuance of this Order, to return to IRG any and all confidential and proprietary information that they transmitted or removed from IRG or otherwise acquired as a result of their work for or affiliation with IRG, including without limitation customer information, claims files, materials, records, documents, electronic files, emails, electronic storage media, hard drives, mobile devices, data compilations, computers, passwords, computer programs and/or data bases, or any confidential information, including without limitation information concerning prospects, methods, inventions, ideas, developments, business plans, claims, sales, products, marketing, finances, technology and employees . . . and to purge from all elec-

---

4. In a wide-ranging, eleven-count complaint, IRG sought equitable and legal remedies for alleged violations of contract, consumer-protection, and computer-fraud laws, among others. *See* Compl. ¶¶ 98–164.

5. Technically, the preliminary injunction order submitted by the parties and available for review is a proposed draft that was neither

signed nor dated. *See* IRG's Mem., Ex. B, [Proposed] Prelim. Inj. 3, ECF No. 23–2. Nevertheless, the parties act as though Judge Gertner's order is an operative document, see, e.g., IRG's Mem. 4; Defs.' Counsel's Opp'n 3, so, for the purposes of this memorandum, this Court does the same.

tronic systems (*e.g.*, computers) all such information. . . .

IRG's Mem., Ex. B, [Proposed] Prelim. Inj. ("Prelim. Inj. Order") 2–3, ECF No. 23–2.

In a letter addressed to then-Chief Judge Wolf[6] the day after the entering of the TRO, Blankinship relayed some of the challenges that the Defendants' Counsel encountered in meeting Judge Gertner's twenty-four-hour deadline, due to the fact that the IRG-owned laptops issued to each of the consultants that were the subject of the TRO (the "IRG laptops") contained "attorney-client privileged email communications between Defendants and their counsel, emails that [were] not confidential or proprietary IRG information which [were] necessary for Defendants' defense . . . , and other emails that [were] not confidential or proprietary . . . that may be relevant to [the] action and whose destruction would be contrary [to] counsel's preservation obligations." Letter from D. Greg Blankinship, Meiselman, Denlea, Packman, Carton & Eberz P.C., to Hon. Mark W. Wolf, U.S. District Court for the District of Mass. (May 27, 2011) ("Blankinship Letter") 1, ECF No. 7. In an effort to provide a workable alternative that would at once comply with the TRO and maintain his clients' information in confidence, Blankinship notified Chief Judge Wolf of the Defendants' Counsel's plan of action:

> [The Defendants' Counsel] have determined that the proper course is to make a forensic copy of the computers, which will be promptly delivered to Defendants' counsel. Once the emails in ques-

tion have been removed from the IRG computers, we will make prompt arrangements for their return. . . . Defendants' counsel will then review the emails in question as quickly as possible and purge any confidential or proprietary information contained therein.

*Id.* at 2.

On June 2, 2011, the consultants returned the four IRG laptops to IRG. IRG's Mem. 5. Computer experts hired by IRG undertook an initial forensic review of the laptops' hard drives the next day. *See* IRG's Mem., Ex. I, Aff. Michael Perry ("Perry Aff.") ¶ 4, ECF No. 23–9. The experts found that each of the hard drives had apparently been "zeroed out,"[7] suggesting that "either the drives [had been] intentionally wiped of data or new hard drives [had] been installed in each Laptop." *Id.* ¶ 5 (internal quotation marks omitted).

A four-day bench trial of IRG's claims commenced on June 9, 2011, before this Court. Elec. Clerk's Notes, June 9, 2011. On the first day of the bench trial, IRG's counsel reported to the Court that the IRG laptops received from the consultants were "completely wiped of any information," Trial Tr. vol. 1, 10:10, June 9, 2011, ECF No. 18, which "frustrated [IRG's] ability to conduct [the bench trial and] figure out what exactly they took, [and] what the state of the claims [were]," *id.* at 10:11–13. Bauchner notified the Court of the Defendants' Counsel's concerns regarding the sensitive information on the IRG computers and of their retention of forensic experts to make imaged copies of

---

**6.** This case was originally assigned to former Chief Judge Wolf, *see* Elec. Notice, May 24, 2011. Presumably because she was serving as the district's emergency judge at the time (but for reasons ultimately unknown to this Court), Judge Gertner entered the order granting IRG's emergency motion, *see* Elec.

Order, May 26, 2011. The case was later reassigned to this Court on June 2, 2011. *See* Elec. Order, June 2, 2011.

**7.** "Zeroing out" describes the process of writing the character "00h" across the entire hard drive. Perry Aff. ¶ 5.

the computers' hard drives. *See id.* at 14:7–19. Notwithstanding the Defendants' Counsel's misgivings, the Court issued a protective order commanding the Defendants to hand the copied hard drives over to IRG but allowing the Defendants to reobtain any materials properly covered by the attorney-client privilege. *See id.* at 14:21–15:23.

The following day at the bench trial, Bauchner informed the Court that the forensic experts' efforts to recover the lost material had been slowed by technical difficulties. Trial Tr. vol. 2, 4:2–8, June 10, 2011, ECF No. 19. The Court, inferring that the materials may have been destroyed, gave the Defendants until June 13, 2011, either to restore the hard drive images or submit evidence explaining what caused the information on the IRG computers to disappear. *See id.* at 153:20–25. The Court further remarked that, aside from the order compelling production of the hard drive images, it would not enter any further discovery orders. *Id.* at 154:17–21, 23–25.

On June 13, 2011, which marked the third day of trial, Bauchner provided IRG's counsel with a hard drive in open court, IRG's Mem., Ex. H, Aff. Lawrence S. Delaney ("Delaney Aff.") ¶ 5, ECF No. 23–8, and notified the Court that he had "produced the hard drive to counsel [that] morning," *see* Trial Tr. vol. 3, 3:24–25, June 13, 2011, ECF No. 16. A review by IRG's computer experts revealed that the hard drive contained data from only three of the IRG laptops. Perry Aff. ¶ 7. This data was located in directories labeled "ISG01–Madison" (containing information pertaining to Salters's daughter, who was not authorized to use IRG systems), "ISG02–Steven" (containing information pertaining to Ieronimo), and "ISG03–Jonathan" (containing information pertaining to Ladenheim). *See id.;* IRG's Mem. 6 n. 7. Moreover, the hard drive provided by Bauchner contained "dynamically provisioned" virtual hard disk images of the information on the IRG laptops, not identical "fixed provisioned" forensic images.[8] Perry Aff. ¶ 7 (internal quotation marks omitted). At IRG's counsel's behest, the experts sifted through the hard drive to locate filtered emails dated on or after April 1, 2011, *see id.* ¶ 10, which covered the period in which the Defendants were believed to have conducted their raid of IRG's subrogation business, IRG's Mem. 6. The experts recovered emails from only one of the consultants-Ieronimo.[9] *See* Perry Aff. ¶ 10; Delaney Aff. ¶ 9. Hundreds of emails sent to and from Ieronimo's IRG Recoveries email account laid bare the consultants' plans to compete with ISG. *See* Delaney Aff. ¶ 11.

On June 16, 2011, after entertaining final arguments by the parties, the Court found and ruled that the consultants breached their respective consulting agreements with IRG. Trial Tr. vol. 4, 46:3–11, June 16, 2011. Consequently, the Court entered an order enjoining Connolly and Salters from participating in the subrogation business for nine months and enjoining all four consultants from soliciting cer-

---

8. Fixed provisioned forensic images of a hard drive generally include unallocated space in which previously deleted files and folders may be stored. *See* Perry Aff. ¶ 8. Dynamically provisioned images, however, do not contain unallocated space, which evidently makes recovery of previously deleted data from such images impossible. *See id.*

9. Twenty-two filtered emails sent to or from Madison Salters were also recovered, *see* Delaney Aff. ¶ 9; *see also* Perry Aff. ¶ 10, but because these emails are of no import to the case at bar, this memorandum omits any further discussion of them.

tain of IRG's customers.[10] *See* J., ECF No. 15. The case was then administratively closed to allow the parties to proceed with arbitration. Elec. Clerk's Notes, June 16, 2011.

At a deposition held on January 6, 2012, in advance of the arbitration, Ladenheim testified to the Defendants' Counsel's purportedly shifting advice regarding the handling of his IRG laptop. Initially, Ladenheim opined, the Defendants' Counsel simply instructed him to return the laptop to IRG, *see* IRG's Mem., Ex. K, Ladenheim Dep. 180:9–16, Jan. 6, 2012, ECF No. 23–11, but after the Defendants' Counsel learned that Ladenheim's IRG Recoveries email account had been installed on the laptop, this instruction eventually became a directive to delete and dispose of "[a]ny materials that [they] ha[d] from IRG," *id.* at 173:19; *see id.* at 173:17–174:1, 177:8–18, regardless of whether they were saved electronically, in physical form, or privileged, *id.* at 100:16–101:9; 177:10–178:3. Although Ladenheim attested that Blankinship gave the other three consultants similar orders, *id.* at 174:23–175:3, he was not so assured in his belief that the other three received such a dictate, *see id.* at 175:4–24.

10. The Court tabled the issues relating to possible spoliation and attorney misconduct for resolution at a later date. *See* Elec. Clerk's Notes, June 16, 2011.

11. At the time of the award's issuance, Connolly stood as the sole respondent in the arbitration (and the sole consultant responsible for paying the award)—IRG had earlier reached settlements with both Ladenheim and Ieronimo, and Salters was dismissed after having sought bankruptcy protection. Pl.'s Mem. Supp. Mot. Reopen Case & Confirm Arbitration Award, Ex. B, Award Arbitrator 3–4, ECF No. 21–2.

12. IRG also avers that the Court's inherent powers could be used to the same effect. IRG's Mem. 13–15. It is true that the imposition of attorneys' fees and costs under a

On July 9, 2012, an arbitrator from the American Arbitration Association awarded IRG a total of $1,865,812.08, which included $264,912.08 in attorneys' fees, $5000 in expert fees, and $27,900 in arbitration fees.[11] Pl.'s Mem. Supp. Mot. Reopen Case & Confirm Arbitration Award, Ex. B, Award Arbitrator ("Arbitral Award") 14–15, ECF No. 21–2. On September 6, 2012, IRG moved to reopen its civil action and confirm the arbitration award issued. Pl.'s Mot. Reopen Case & Confirm Arbitration Award, ECF No. 20. Just over a month later, the Court granted IRG's request, confirming the arbitration award and entering final judgment in favor of IRG. Order Confirming Arbitration Award ("Confirmation Arbitral Award"), ECF No. 40.

## II. ANALYSIS

### A. Standard of Review

IRG properly cites section 1927 of Title 28 of the United States Code ("section 1927") and Federal Rule of Civil Procedure 37 ("Rule 37") as sources of the Court's authority to grant its extant motion for sanctions and its request for attorneys' fees and costs.[12] *See* IRG's Mem.

court's inherent powers is permissible in a narrow set of circumstances, including (1) where an attorney "willful[ly] disobe[ys] . . . a court order," *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)) (internal quotation marks omitted); and (2) where an attorney "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *id.* at 45–46, 111 S.Ct. 2123 (quoting *Alyeska,* 421 U.S. at 258–59, 95 S.Ct. 1612) (internal quotation marks omitted). "Because of their very potency," however, "inherent powers must be exercised with restraint and discretion." *Id.* at 44, 111 S.Ct. 2123. As a result, courts are instructed to exercise these powers only when the remedy sought by the moving party will

13–16; IRG's Reply 8; *see also Galanis v. Szulik*, 841 F.Supp.2d 456, 460 (D.Mass. 2011) (Gorton, J.), *sanctions aff'd in part on reconsideration*, 863 F.Supp.2d 123 (D.Mass.2012) (Gorton, J.). The relevant standard of review applicable to a sanctions motion, however, depends upon the particular authority invoked.

■ Section 1927 grants courts the latitude to impose upon "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions meted out under the auspices of 28 U.S.C. section 1927, however, cannot be founded upon common error or ineptitude alone. *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 64 (1st Cir.2008). Instead, though they need not rise to a level warranting a stamp of bad faith, "an attorney's actions must evince a studied disregard of the need for an orderly judicial process, or add up to a reckless breach of the lawyer's obligations as an officer of the court." *Id.* (citation omitted).

Rule 37 permits courts to levy sanctions against parties that fail to comply with discovery orders. *See* Fed.R.Civ.P. 37(b)(2)(A). Unlike sanctions issued pursuant to section 1927, however, the offending party need not have acted in bad faith in order to suffer the consequences of a Rule 37 sanction. *Díaz–Fonseca v. Puerto Rico*, 451 F.3d 13, 26 (1st Cir.2006).

**B. Spoliation**

■ "Spoliation" is a legal term of art used to refer to "the destruction or alteration of evidence, or failure to preserve evidence for use of the opposing party for pending or future litigations." *Porcal v. Ciuffo*, No. 10–cv–40016–TSH, 2011 WL 4499011, at *3 (D.Mass. Sept. 23, 2011) (Hillman, M.J.). "[B]ad faith is not essential" to make out a spoliation claim. *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d 444, 447 (1st Cir.1997). That said, "bad faith is a proper and important consideration in deciding whether and how to sanction conduct resulting in the destruction of evidence." *Id.* Moreover, even absent bad faith, the missing evidence must have been prejudicial to the nonspoliating party's ability to put on its case or mount a defense. *See id.; see also Collazo–Santiago v. Toyota Motor Corp.*, 149 F.3d 23, 29 (1st Cir.1998) ("[O]f particular importance when considering the appropriateness of sanctions [for spoliation of evidence] is the prejudice to the non-offending party and the degree of fault of the offending party.").

■ Given the record as a whole, Defendants' Counsel did not exhibit the bad faith necessary to sustain a claim for spoliation sanctions. IRG insists that the materials available in the record evince an intent on the part of the Defendants' Counsel to "orchestrate[ ] the permanent destruction [of] virtually all relevant evidence in [the consultants'] possession." IRG's Mem. 16. For support, IRG relies predominantly upon the sworn deposition testimony of Ladenheim, *see id.* at 16–17, who said that the Defendants' Counsel had instructed him to destroy "[a]ny materials that [the consultants] ha[d] from IRG," Ladenheim Dep. 173:19.

■ A singular affidavit—especially one whose veracity is disputed by conflicting

---

not be accomplished by appealing to either 28 U.S.C. section 1927 or the Federal Rules of Civil Procedure. *See Galanis v. Szulik*, 841 F.Supp.2d 456, 460 (D.Mass.2011) (Gorton, J.), *sanctions aff'd in part on reconsideration*, 863 F.Supp.2d 123 (D.Mass.2012) (Gorton, J.).

accounts—cannot be fully credited.[13] *Cf. In re Herbst*, 76 B.R. 882, 885 (Bankr. D.Mass.1987) (Queenan, Bankr. J.) (observing on a motion for summary judgment that "[w]hen comparing competing affidavits and materials submitted by the parties, a court must carefully scrutinize the moving party's papers while treating the opposing party's papers indulgently"). Neither Connolly nor Salters endorse Ladenheim's characterization that the Defendants' Counsel directed them to destroy any materials outside the scope of the TRO. *See* Defs.' Counsel's Opp'n, Attach. 2, Aff. John Connolly ("Connolly Aff.") ¶¶ 3–4, ECF No. 44–2; Defs.' Counsel's Opp'n, Attach. 4, Aff. Neil L. Salters ("Salters Aff.") ¶¶ 6–7, ECF No. 44–4; *see also* Trial Tr. vol. 3, 56:10–16 (relaying Salters's understanding under the TRO that he was required to "return IRG material or destroy IRG material," *id.* at 56:15–16, but failing to attribute that understanding to the Defendants' Counsel's communications). Ieronimo's affidavit serves partially to corroborate Ladenheim's version of the events. *See* IRG's Mem., Ex. M, Aff. Steven Ieronimo ¶¶ 10–12, ECF No. 23–13 (commenting on the Defendants' Counsel's departure from merely advising that the consultants return their laptops to IRG). Ieronimo, however, does not go so far as to say that the Defendants' Counsel instructed him to destroy evidence that was subject to the TRO. *Id.* ¶¶ 11–12 (noting that the Defendants' Counsel "told [Ieronimo] they would remove *attorney-client emails* from the laptops," *id.* ¶ 11 (emphasis added), and "instructed [Ieronimo] to delete from [his] *personal AOL account* any IRG materials that [he] had *forwarded to that account*," *id.* ¶ 12 (emphases added)).

Contrary to the statements in the competing affidavits, *see* Connolly Aff. ¶ 5; Salters Aff. ¶ 8, however, there is evidence in the record to support IRG's contention that the Defendants' Counsel directed the consultants to discard physical (as well as electronic) materials and did not specifically isolate documents based on their putative privileged status, *see, e.g.,* IRG's Reply, Ex. B, Excerpts Meiselman Prod. ("Meiselman Emails") MD 000039, ECF No. 52–2 (transcribing an email from Blankinship to Ieronimo and Ladenheim in which the former asked the latter to confirm that they "ha[d] no electronic or paper copies of any kind related in any way to [the] IRG or ISG subrogation business"). Yet throughout the emails made available by the parties, the Defendants' Counsel's intent to comply with the terms of the TRO is evident. *See, e.g., id.* ("[W]e do need to be sure that we are in compliance with the May 26 Temporary Restraining Order."); *id.* at MD 000111 ("[Ieronimo], attached is the affidavit we need to submit to IRG counsel certifying that you either do not have, or have purged, all IRG data and other information. We need to get this signed ASAP, but most important is that it is correct. You will be signing this under the pains of perjury in a federal court—you *must* be sure it is accurate and that you have complied with *everything* presented."); *id.* at MD 000113 ("[Ieronimo], you have to immediately stop using [your IRG] computer. Any personal information or data should be removed ASAP. We have told IRG that they can pick up the computers immediately, and we are now under a court order to do so."); *id.* at MD 000133 ("We need to submit affidavits today for all four of you. . . . I cannot emphasize enough the

---

**13.** Indeed, an earlier affidavit signed by Ladenheim made no mention whatsoever of any such instructions. *See* Decl. Michael A. Berg, Ex. K, Aff. Jonathan Ladenheim, ECF No. 45–3.

importance of being sure that we have returned or deleted everything that counts as IRG data or business documents *before* you sign the affidavits."). Such well-meaning motivation sufficiently undercuts IRG's spoliation claim. *See Sacramona*, 106 F.3d at 447 ("[B]ad faith is a proper and important consideration in deciding whether and how to sanction conduct resulting in the destruction of evidence."); *see also Jensen*, 546 F.3d at 64 (mandating that, in order for a court to issue sanctions under 28 U.S.C. section 1927, "an attorney's actions must evince a studied disregard of the need for an orderly judicial process").

■ As additional proof of spoliative activity, IRG points to the fact that (1) the laptops returned to IRG had been zeroed out, (2) the images contained on the hard drive provided by Bauchner were not forensic copies of the IRG laptops, and (3) the hard drive contained no data from Salters or Connolly, nor did it contain any ISG Recoveries emails from Ladenheim. IRG's Reply 1. That the Defendants' Counsel played any role in zeroing out the laptops or producing forensic copies of relevant data is far from obvious, as the responsibility of conducting forensic analysis was formally assigned to the Defen-

dant's Counsel's computer consultant. *See* Defs.' Counsel's Opp'n, Attach. 1, Aff. D. Greg Blankinship ("Blankinship Aff.") ¶ 16, ECF No. 44–1. Moreover, in an email from the computer consultant to Blankinship sent during the course of the bench trial, the computer consultant represented that the hard drive contained "a full snapshot/clone of the PC[s] at the time of … backup." Decl. Michael A. Berg ("Berg Decl."), Ex. O, Email from Jeffrey M. Olsen to Greg Blankinship ("Olsen Email") (June 10, 2011, 3:24 PM), at 3, ECF No. 45–3. Finally, the recovery of scant data pertaining to Salters, Connolly, and Ladenheim is explained (at least ostensibly) by the fact that these consultants rarely used their laptops. *See, e.g.,* Ladenheim Dep. 81:10–82:2; Berg Decl., Ex. O, Email from Greg Blankinship to Joshua Bauchner (June 16, 2011, 12:28 PM), at 1, ECF No. 45–3. There is insufficient evidence in the record, then, to adjudge Defendants' Counsel's conduct deserving of sanctions for spoliation.[14]

## C. Violation of Discovery Orders

■ IRG argues that even if the Defendants' Counsel's actions did not themselves amount to spoliation, they nevertheless vi-

---

**14.** A holding in the alternative—that the Defendants' Counsel had in fact intentionally directed the consultants to destroy evidence—does nothing to upend the Court's judgment. As stated above, in deciding whether to award sanctions for spoliation of evidence, a court must take into primary account whether the nonspoliating party suffered undue prejudice. *See Sacramona*, 106 F.3d at 447. Spoliation is typically deemed to have prejudicial effect "where a party's ability to present its case or to defend is compromised." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D.Md.2010).

IRG first contends that the consultants' alleged destruction of IRG—and ISG Recoveries–related data proved detrimental to its abil-

ity to put on its case. *See* IRG's Reply 8. The merits of this claim are not borne out by the results of the court and arbitration proceedings, however, where IRG succeeded in prevailing over the consultants, *see* Arbitral Award; Confirmation Arbitral Award, even without the aid of discovery, *see* Trial Tr. vol. 2, 154:17–21, 23–25. IRG's second contention that the Defendants' Counsel's alleged misconduct prevented a swift and cost-effective resolution of the dispute with the consultants, *see* IRG's Reply 8, is wholly speculative, as "[t]he considerations leading to a settlement are many and varied; [and] at times … have little to do with the basic facts of a case." *Kinan v. City of Brockton*, 876 F.2d 1029, 1034 (1st Cir.1989).

olated both the orders by this Court to produce the hard drive with mirrored images of the information on the IRG laptops and the TRO entered by Judge Gertner. *See* IRG's Mem. 17–18.

IRG distorts the Defendants' Counsel's statement to the Court regarding the delivery of the hard drive to IRG's counsel. While IRG argues that Bauchner "falsely represented" that the hard drive presented on the third day of trial contained mirrored images, *id.* at 18, Bauchner merely reported that he had "produced the hard drive to counsel [that] morning," *see* Trial Tr. vol. 3, 3:24–25. Given that the Defendants' Counsel's computer consultant himself confirmed that true forensic copies of the information on the IRG laptops had been produced, and that the Defendants' Counsel were not ultimately responsible for conducting the forensic analysis, *see* Blankinship Aff. ¶ 16; Olsen Email 3, this Court cannot hold them liable for the hard drives' missing or distorted contents.

■ The TRO gives rise to a thornier issue, however. Judge Gertner commanded the consultants "to return to IRG any and all confidential and proprietary information that they transmitted or removed from IRG or otherwise acquired as a result of their work for or affiliation with IRG ... and to purge from all electronic systems (*e.g.*, computers) all such information." Prelim. Inj. Order 2–3 (first emphasis added). The language in the order constituted a facial contradiction in terms, compelling the consultants to both give back and destroy any and all of IRG's confidential and proprietary information. Courts have found unjust the imposition of sanctions on the basis of a violation of a discovery order that is subject to more than one reasonable interpretation. *See, e.g., Pascale v. G.D. Searle & Co.*, 90 F.R.D. 55, 59 (D.R.I.1981). The Court finds eminently persuasive, however, IRG's assertion that "[t]he only rational interpretation of [the language in the TRO] required Defendants to return the Laptops and purge any duplicate copies of confidential information stored on their home computers so they could not use them to compete against IRG." IRG's Mem. 17 n. 13. This inference is further substantiated by the letter to Chief Judge Wolf, in which Blankinship acknowledged his clients' preservation obligations. *See* Blankinship Letter 2 ("Once the emails in question have been removed from the IRG computers, we will make prompt arrangements for their return.... Defendants' counsel will then review the emails in question as quickly as possible and purge any confidential or proprietary information contained therein.").

Regardless of whether one could reasonably construe the ambiguity resident in the text of the TRO in multiple ways, one thing is certain: the Defendants' Counsel did not comply with the letter of the TRO. *See, e.g.*, Meiselman Emails MD 000039 (asking Ieronimo and Ladenheim to confirm that they "ha[d] no electronic or paper copies of any kind related in any way to [the] IRG or ISG subrogation business"). A plain reading of Rule 37 makes the award of reasonable expenses upon *any* violation of a discovery order, as a general matter, mandatory, not permissive. *See* Fed.R.Civ.P. 37(b)(2)(C) (explaining that although courts have before them a menu of options from which to choose when fashioning an appropriate sanction for failure to comply with a discovery order, they *"must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure" (emphasis added)). The

rule carves out two exceptions, however, granting a court the leeway to withhold sanctions: (1) where "the failure was substantially justified" and (2) where "other circumstances make an award of expenses unjust." *Id.*

 The Defendants' Counsel cannot seek asylum under the first exception. To be sure, the phrase "substantially justified" in Rule 37 does not require that the failure to comply with a discovery order be "justified to a high degree." *Guam Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, Nos. 11–00014, 11–0031, 2013 WL 4525228, at *2 (D.Guam Aug. 26, 2013) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)) (internal quotation marks omitted). Rather, this standard is met if a reasonable person would be satisfied by the justification. *Id.* (citing *Pierce*, 487 U.S. at 565, 108 S.Ct. 2541). As stated above, though, this Court takes the instructions by Judge Gertner to have been quite clear, and it holds that the failure to provide mirrored data from the IRG laptops and the Defendants' Counsel's instruction to purge IRG-related information indiscriminately (without making special note of items in physical form or labeled privileged, or at least not doing so consistently) were not substantially justified.

The Defendants' Counsel cannot profit from the second exception, either. Courts have deemed the award of expenses unjust in only a limited set of circumstances. *See, e.g., Cummings v. Standard Register Co.*, 265 F.3d 56, 68 (1st Cir.2001) (upholding a magistrate judge's determination that imposing sanctions on a company for "failing to produce documents before its time period for filing a response [to the plaintiff's initial request for attorneys' fees] ... had expired would be 'unjust' ");

*Rachel–Smith v. FTData, Inc.*, 247 F.Supp.2d 734, 739 (D.Md.2003) ("Given the number and types of discovery disputes—many of them *de minimis*—that have occurred over the course of the present litigation, an award of fees here would be unjust."). Certainly, the record demonstrates the Defendants' Counsel's vigorous efforts to stay abreast of the litigation and, to the best of their ability, ensure that their clients did not retain any sensitive IRG information. Although at least one court has found that the absence of good faith in responding to a discovery order merits sanctions, *see Chudacoff v. Univ. Med. Ctr.*, No. 2:08–cv–00863–RCJ–GWF, 2013 WL 1737201, at *3 (D.Nev. Apr. 22, 2013) (allowing the plaintiff to have his expenses reimbursed under Rule 37(b)(2)(C) because "Defendants[ ] and their counsel[ ] fail[ed] to reasonably and in good faith comply with [the] Court's order [to properly answer the plaintiff's interrogatories]"), there is nothing in the case law to suggest that good-faith non-compliance, in and of itself, is sufficient to prevent the award of attorneys' fees under the "unjust" exception inscribed in Rule 37(b)(2)(C). Accordingly, IRG's claim for attorneys' fees, based upon the Defendants' Counsel's failure to comply with the discovery orders, may lie.

## III. CONCLUSION

For the foregoing reasons, IRG's motion for sanctions, ECF No. 22, is DENIED IN PART AND GRANTED IN PART. The motion is DENIED to the extent that IRG seeks sanctions for spoliation. The motion is GRANTED to the extent that IRG seeks costs and attorneys' fees traceable to the Defendants' Counsel's failure to comply with the discovery orders. The Court grants IRG thirty (30) days from the date of this memorandum and order to submit

28

documentation of the expenses for which it requests reimbursement.

**SO ORDERED.**