# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2021

ARGUED: JANUARY 20, 2022
DECIDED: MARCH 23, 2023

No. 21-22

SHAWN MICHAEL VINCENT,
*Plaintiff-Appellee*,

*v.*

ANTHONY J. ANNUCCI,
*Defendant-Appellant*,

BRUCE S. YELICH, Superintendent, Bare Hill Correctional Facility;
BRIAN S. FISCHER, Commissioner, New York State Department of
Corrections and Community Supervision; RICHARD DESIMONE;
LUCIEN J. LECLAIRE, JR.; GLENN S. GOORD; HENRY LEMONS, JR.;
GEORGE B. ALEXANDER; ROBERT DENNISON; BRION D. TRAVIS; JOHN
DOE; and JANE DOE,
*Defendants.*

————

Appeal from the United States District Court
for the Western District of New York.

————

Before: KEARSE, WALKER, and SULLIVAN, *Circuit Judges*.

————

Shawn Michael Vincent brought this action under 42 U.S.C. § 1983, seeking compensatory damages for the 686 days that he was unlawfully incarcerated after this court clearly established in *Earley v. Murray*, 451 F.3d 71 (2d Cir.) (*Earley I*), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006) (*Earley II*), that only a court could lawfully impose post-release supervision (PRS). Vincent served this time for violating the terms of his PRS that the New York Department of Correctional Services (DOCS)—not his sentencing judge—had imposed. He sued various New York state officials including Anthony Annucci, then-Deputy Commissioner and legal counsel for DOCS, for the unlawful deprivation of his liberty under the Due Process Clause of the 14th Amendment of the Constitution.

On appeal, Annucci challenges the district court's award of compensatory damages to Vincent and revives his claim of qualified immunity which was previously unsuccessful. We previously held in *Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013), that the unconstitutionality of administratively imposed terms of PRS was clearly established by *Earley I*. And we later held in *Betances v. Fischer*, 837 F.3d 162 (2d Cir. 2016), that because Annucci failed to make objectively reasonable efforts to comply with federal law that was clearly established by *Earley I*, he was not entitled to qualified immunity. Annucci offers no compelling argument for us to reconsider these prior holdings. We thus conclude that the district court (Larimer, *J.*) did not err in applying our prior precedents to deny him qualified immunity.

We remand solely for the district court to reconsider the issue of damages.  While *Earley* gave the state the option of either (1) arranging for defendants subject to null and void PRS terms to be appropriately resentenced or (2) excising their PRS terms, we did not decide which defendants were eligible for resentencing.  We now hold that the resentencing option was not available for defendants like Vincent, who had completed their judicially imposed sentences and were incarcerated solely for violating their administratively imposed PRS terms.  We remand for the district court to determine the steps that were available to Annucci, to conduct any additional fact finding that may be necessary in that regard, and to reconsider, in light of these findings and determinations, whether Vincent established his entitlement to compensatory damages.

For the reasons that follow, we affirm in part and vacate in part the district court's decision, and remand for proceedings consistent with this opinion.

In a separate opinion, Judge Kearse dissents in part and concurs in part.

————

JON P. GETZ, Law Office of Jon Getz, Rochester, NY (K. Wade Eaton, The Eaton Law Firm, Pittsford, NY, *on the brief*), *for Shawn Michael Vincent*.

BRIAN D. GINSBERG, Assistant Solicitor General of Counsel (Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Barbara D. Underwood, Solicitor General *and* Letitia James, Attorney General of the

State of New York, Albany, NY, *for Anthony J. Annucci*.

Matthew D. Brinckerhoff, Emery Celli Brinckerhoff Abady Ward & Maazel LLP, New York, NY, *for amici curiae the Plaintiff Class in Betances v. Fischer*.

————

JOHN M. WALKER, JR., *Circuit Judge*:

Shawn Michael Vincent brought this action under 42 U.S.C. § 1983, seeking compensatory damages for the 686 days he was unlawfully incarcerated after this court had clearly established in *Earley v. Murray*, 451 F.3d 71 (2d Cir.) (*Earley I*), *reh'g denied*, 462 F.3d 147 (2d Cir. 2006) (*Earley II*), that only a court could lawfully impose post-release supervision (PRS). Vincent served this time for violating the terms of his PRS that the New York Department of Correctional Services[1]—not his sentencing judge—had imposed. He sued various New York state officials including Anthony Annucci, then-Deputy Commissioner and legal counsel for the New York Department of Correctional Services, for the unlawful deprivation of his liberty under the Due Process Clause of the 14th Amendment of the Constitution.

On appeal, Annucci challenges the district court's award of compensatory damages to Vincent and revives his claim of qualified

_____

[1] The New York State Department of Correctional Services is currently named the New York State Department of Corrections and Community Supervision. Consistent with our prior decisions, we will continue to use the previous name.

immunity which was previously unsuccessful. We previously held in *Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013), that the unconstitutionality of administratively imposed terms of PRS was clearly established by *Earley I*. And we later held in *Betances v. Fischer*, 837 F.3d 162 (2d Cir. 2016), that because Annucci failed to make objectively reasonable efforts to comply with federal law that was clearly established by *Earley I*, he was not entitled to qualified immunity. Annucci offers no compelling argument for us to reconsider these prior holdings. We thus conclude that the district court (Larimer, *J*.) did not err in applying our prior precedents to deny him qualified immunity.

We remand solely for the district court to reconsider the issue of damages. While *Earley* gave the state the option of either (1) arranging for defendants subject to null and void PRS terms to be appropriately resentenced or (2) excising their PRS terms, we did not decide which defendants were eligible for resentencing. We now hold that the resentencing option was not available for defendants like Vincent, who had completed their judicially imposed sentences and were incarcerated solely for violating their administratively imposed PRS terms. We remand for the district court to determine the steps that were available to Annucci, to conduct any additional fact finding that may be necessary in that regard, and to reconsider, in light of these findings and determinations, whether Vincent established his entitlement to compensatory damages.

For the reasons that follow, we affirm in part and vacate in part the district court's decision, and remand for proceedings consistent with this opinion.

## BACKGROUND

This appeal is the second in this case but part of a decades-long series of litigations over DOCS's unconstitutional imposition of PRS and re-incarceration of felons who violated the terms and conditions of their unlawful PRS. Accordingly, some familiarity with this court's sequence of decisions is presumed.

Vincent's Incarceration

We draw the following undisputed facts from the district court's summary judgment decision in favor of Vincent. In 2001, Vincent pled guilty and was sentenced to five years' imprisonment. At the time, New York law required that every determinate sentence[2] for a repeat violent felony offender, like Vincent, be followed by a five-year term of PRS.[3] The state court did not impose PRS at Vincent's sentencing. Vincent's imposed sentence expired on October 4, 2005, but he was conditionally released on January 15, 2005 for good conduct. Following his conditional release, DOCS unilaterally imposed a five-year PRS term. On October 14, 2005, ten days after his judicially imposed determinate sentence ended, Vincent was arrested for possessing a credit card, which was a violation of a condition of his PRS, and taken into custody. Nearly a year later, on August 29, 2006, while Vincent was in custody, a state judge determined that he had violated the terms of the administratively imposed PRS. He was

---

[2] N.Y. Penal Law § 70.45(1). In New York, determinate sentences are fixed terms that are given to persons convicted, among other things, of violent felonies. N.Y. Penal Law § 70.02(2)(a)–(c) (McKinney 2011). These defendants are eligible for conditional release based on good time conduct. N.Y. Penal Law § 70.40(2).

[3] N.Y. Penal Law § 70.45(2).

released on March 21, 2007 after completing this sentence. Two weeks later, on April 5, Vincent was again arrested for violating his PRS, this time because he failed to report an address change. He was immediately reincarcerated and sentenced to an additional two years.

While Vincent was in custody awaiting adjudication of his first PRS violation, this court held in *Earley v. Murray* that PRS terms that are not imposed by a judge are unconstitutional and are thus null and void.[4] In March 2008, while serving the sentence for his second PRS violation, Vincent filed a state habeas petition asserting that his incarceration for the PRS violations was unconstitutional, which was granted. Vincent was released in July 2008.

Separately, by form letter dated June 1, 2008—nearly two years after we decided *Earley*—Annucci, DOCS's legal counsel, advised Vincent's sentencing judge that he had not imposed a PRS term in 2001 and requested that the judge either hold a hearing to determine whether to resentence Vincent or direct DOCS to release him. The state sentencing judge never resentenced Vincent; nor did that judge ever issue an order in response to Annucci's letter.

Procedural History

Vincent was incarcerated for 686 days for violating the terms of his PRS after the Second Circuit's August 31, 2006 decision in *Earley II* denying rehearing of *Earley I*.[5] He brought the instant civil action under § 1983, seeking damages from Annucci and others for DOCS's

---

[4] *Earley v. Murray*, 451 F.3d 71 (2d Cir.) *("Earley I"), reh'g denied*, 462 F.3d 147 (2d Cir. 2006) *("Earley II")*.

[5] Although Vincent served a total of 1,006 days for violating PRS, 686 days postdate our decision in *Earley II*.

unlawful imposition and enforcement of PRS, including Vincent's arrests and incarceration.

The district court initially granted Annucci's motion to dismiss, ruling that Annucci was entitled to qualified immunity.[6]  This court reversed and remanded, holding that *Earley* "clearly established that DOCS violated federal law in adding PRS terms to the sentences of prisoners who had not received such terms from the court."[7]  As for Annucci's personal involvement, the record in *Vincent I* established Annucci's "relevant responsibilities," including his position as "chief legal advisor" for DOCS and his acknowledged responsibility "for all of the legal services" in his "capacity as the head of counsel's office."[8] The *Vincent I* panel also acknowledged Annucci's testimony in another case that he was "aware" of *Earley* shortly after its issuance in 2006, but that he "did not agree with that decision" and that he "did not begin a resentencing initiative" "at that time."[9]  The *Vincent I* panel remanded for the district court to develop further the factual record to determine "the objective reasonableness of Annucci's efforts to relieve [plaintiffs] of the burdens of those unlawfully imposed terms after he knew it had been ruled that the imposition violated federal law."[10]

Independently, after Vincent's case was remanded to the district court, a § 1983 suit on behalf of a class of individuals subjected to administratively imposed PRS was filed against Annucci and other

---

[6] *Vincent v. Yelich*, 812 F. Supp. 2d 276 (W.D.N.Y. 2011).

[7] *Vincent I*, 718 F.3d at 173-74.

[8] *Id.* at 172.

[9] *Id.* at 173 (citing *State v. Myers*, No. 4834-08, Sup. Ct. Albany Cnty., N.Y., Hr'g Tr., June 6, 2008, at 104).

[10] *Id.* at 177.

DOCS officials.[11]    Annucci again asserted a qualified-immunity defense in that case, *Betances v. Fischer*.[12]  On appeal, a panel of this court in *Betances* held that Annucci's entitlement to qualified immunity extended only to August 31, 2006—when the *Earley* court denied the petition for rehearing—after which it was clearly established that administratively imposed PRS violated federal due process guarantees.[13]  The court also held that for 19 months after August 31, 2006, Annucci failed to take objectively reasonable steps to comply with *Earley*.[14]  Annucci acknowledged that he understood that *Earley* required him to change DOCS's policies and customs to conform with federal law, that "nothing prevented" him from doing so, and that he "affirmatively decided not to do so" for over a year and a half.[15]  The court rejected Annucci's attempt to shift blame to the state courts, which he argued resisted implementing *Earley*'s holding.[16]  Their conduct did not bear on whether Annucci took objectively reasonable steps after it was clearly established that DOCS-imposed PRS terms violated federal law.[17]

---

[11] The plaintiff class filed an amicus brief in this case in support of Vincent and affirming the judgment below.

[12] *Bentley v. Dennison*, 852 F. Supp. 2d 379 (S.D.N.Y. 2012), *aff'd sub nom. Betances v. Fischer*, 519 F. App'x 39 (2d Cir. 2013).  While Vincent meets the eligibility requirements of the class definition—and represented to the district court that he was a member—he confirmed to this court that he has elected to exclude himself from the class and to proceed with his earlier-filed individual lawsuit.  *See* Doc. No. 79.

[13] *Betances v. Fischer*, 837 F.3d 162, 171-72 (2d Cir. 2016).

[14] *Id.* at 172.

[15] *Id.* at 172-73.

[16] *Id.* at 174.

[17] *Id.* at 173-74; *see also Vincent I*, 718 F.3d at 177.

With the benefit of the *Betances* decision, Vincent and Annucci each moved for summary judgment in this case. Vincent moved for a finding that Annucci violated his constitutional rights, and that he was entitled to compensatory damages. Annucci again moved to dismiss the complaint as barred by qualified immunity. In the alternative, Annucci sought to limit Vincent's recovery to nominal damages. According to Annucci, Vincent was at most "deprived of his due process right to have a judge pronounce his PRS term" and would have remained incarcerated anyway, so he suffered no actual injury for which he could be compensated.[18]

Relying on controlling circuit case law, the district court denied Annucci's claim to qualified immunity. The district court also rejected Annucci's alternative nominal-damages argument and granted Vincent's motion for compensatory damages as a matter of law. It concluded that "but for Annucci's failure to promptly excise Vincent's PRS or to refer him for curative resentencing," Vincent might have been spared some part of the 686 days he was incarcerated.[19] That was sufficient for the district court to find that Vincent was injured without it engaging in what it deemed "baseless speculation" as to what might have happened to Vincent had Annucci complied with *Earley*.[20]

The district court then held a hearing on the amount of damages and, based on the parties' submissions, awarded Vincent $175,000. Annucci timely appealed.

---

[18] Joint App'x 298.

[19] Special App'x 16.

[20] Special App'x 15.

### DISCUSSION

Annucci appeals the district court's grant of summary judgment as to Vincent's entitlement to compensatory damages. He also reiterates that he is entitled to qualified immunity.

### I.    Qualified Immunity

As noted earlier, we have previously heard and rejected Annucci's qualified-immunity argument. Generally, we review a denial of qualified immunity *de novo*.[21] But Annucci concedes—as he must—that this "panel is bound by this Court's decision in *Vincent* [*I*] denying [him] qualified immunity."[22] We are also bound by our related decision in *Betances*, which held that Annucci's unexcused delay in complying with *Earley* was objectively unreasonable.[23]

In his brief, Annucci claims that the *Vincent I* court "erroneously focused only on federal case law" to hold that the unconstitutionality of administratively imposed PRS terms was "clearly established."[24] In *Vincent I*, however, we made it clear that "[f]or a right to be 'clearly established' for purposes of qualified immunity, it is sufficient if decisions of the Supreme Court or of the appropriate circuit have defined the contours of the right with reasonable specificity."[25] *Vincent I* appropriately relied on *Earley*'s "explicit ruling" that "New

---

[21] *Arlio v. Lively*, 474 F.3d 46, 51 (2d Cir. 2007).

[22] Appellant's Br. 22.

[23] *See United States v. Jass*, 569 F.3d 47, 58 (2d Cir. 2009) (We are "bound by prior decisions of this court unless and until the precedents established therein are reversed *en banc* or by the Supreme Court.").

[24] Appellant's Br. 22-23.

[25] *Vincent I*, 718 F.3d at 169 (emphasis and internal quotation marks omitted).

York's Department of Correctional Services has no . . . power to alter a sentence."[26]  Annucci's suggestion that, because certain lower state court decisions initially rejected *Earley*'s logic, the law was not clearly established has no merit.  While we may "look to state court decisions to determine if a federal right has been clearly established,"[27] we had no need to do so in *Vincent I.  Earley* was a decision that *this* court had issued.  Under the Supremacy Clause of the Constitution, it was binding on state courts and state officials, regardless of their willingness to accept it.

## II.    Vincent's Entitlement to Compensatory Damages

A § 1983 plaintiff must establish that a person acting under the color of state law deprived him of a right guaranteed by the Constitution or the laws of the United States.[28]  The burden is "normally on the plaintiff to prove each element of a § 1983 claim, including those elements relating to damages."[29]  "The cardinal principle of damages in Anglo-American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty."[30]  For that reason, a plaintiff seeking compensatory damages in a § 1983 suit must prove more than just a deprivation of his rights; he must also establish that the "deprivation caused him some actual injury."[31]  If

---

[26] *Id.* (quoting *Earley I*, 451 F.3d at 76).

[27] *Sloley v. VanBramer*, 945 F.3d 30, 43 (2d Cir. 2019).

[28] *Rodriguez v. Phillips*, 66 F.3d 470, 473 (2d Cir. 1995).

[29] *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir. 1993).  In "truly extraordinary circumstances," such as when the defendant has prevented the plaintiff from accessing evidence needed to prove causation, we recognize a "limited exception" and shift the burden to the defendant to disprove causation.  *Id.*  Nothing like that happened here.

[30] *Carey v. Piphus*, 435 U.S. 247, 254-55 (1978).

[31] *McCann v. Coughlin*, 698 F.2d 112, 126 (2d Cir. 1983).

he cannot marshal that proof, he is at most entitled to collect nominal damages.  Similarly, "[w]hen a defendant has deprived the plaintiff of liberty, but the adverse action would have been taken even in the absence of the wrongful conduct, the plaintiff is entitled only to nominal damages."[32]  This sort of analysis requires the court to reconstruct what would have "occurred had proper procedure been observed."[33]

As we have previously explained, Annucci's liability "arose from [his] unreasonable delay in acting to comply with *Earley I* for many months after that decision,"[34] not from the initial pre-*Earley* imposition of PRS.[35]  The sole issue before us now is the question of damages that resulted from Annucci's liability.  The dispositive issue is whether, in moving for summary judgment, Vincent established that he suffered an injury as a result of Annucci's failure to follow our directive in *Earley* that would not have occurred otherwise.

The district court relied on the undisputed facts that Annucci did not promptly refer Vincent for a resentencing following *Earley*

---

[32] *Rentas v. Ruffin*, 816 F.3d 214, 223 (2d Cir. 2016) (cleaned up); *see also Miner*, 999 F.2d at 660 (citing *Carey*, 435 U.S. at 266).

[33] *Patterson v. City of Utica*, 370 F.3d 322, 338 (2d Cir. 2004) (quoting *Miner*, 999 F.2d at 660).

[34] *Hassell v. Fischer*, 879 F.3d 41, 51 (2d Cir. 2018); *see also Betances*, 837 F.3d at 171-72 (noting that "liability may not be imposed for the failure to take action before [August 31, 2006]").  At least one court has since held that Annucci should have acted to notify the state court within 45 days of a defendant being subject to administratively imposed PRS.  *Hassell v. Fischer*, No. 13-CV-1992 (AKH), 2016 WL 10920013, at *2 (S.D.N.Y. July 18, 2016), *aff'd in part, vacated in part, remanded*, 879 F.3d 41 (2d Cir. 2018).  We had no need to reach this holding and therefore did not disturb it on appeal.

[35] *Vincent I*, 718 F.3d at 171 (noting Vincent's complaint was flawed insofar as it challenged "the pre-*Earley I* adoption of the DOCS policy").

and that Vincent was not released until nearly two years after that decision. Rather than address what might have happened to Vincent had Annucci acted responsively to *Earley*, the court simply declared it would instead "forever remain a mystery."[36] In so doing, the court improperly declined to consider what steps were feasibly and legally available to Annucci, did not discuss Vincent's burden of proving damages, and did not determine whether Vincent had met that burden. The district court's cursory treatment of damages causation does not comport with our precedent and thus warrants remand and reconsideration.

As the district court proceeds on remand, it should be mindful of the following. *Earley* held that the practice of administratively imposing PRS was unconstitutional, rendering any such PRS null and void. As we explained in *Vincent I*, *Earley* did not absolve New York of its unconstitutional conduct and announce a prospective rule that would affect only future defendants.[37] It was incumbent on the state to rectify the constitutional violations that were *ongoing*. As to those affected persons, the state "was required" to arrange for people to be "resentenced by the court for the imposition of PRS terms in a *constitutional* manner or . . . excise the PRS conditions from their records and relieve them of those conditions."[38] While we indicated in *Earley* that our ruling was "not intended to preclude the state from moving in the New York courts to modify [the defendant's] sentence to include the mandatory PRS term,"[39] we expressed no opinion then as to which defendants were constitutionally eligible for resentencing.

---

[36] Special App'x 16.

[37] *Vincent I*, 718 F.3d at 172-73.

[38] *Id.* at 172 (emphasis added).

[39] *Earley I*, 451 F.3d at 77.

Since *Earley*, we have held that there is no constitutional bar to resentencing defendants who were incarcerated and serving determinate sentences without a judicially imposed PRS term.[40] "[S]o long as the defendant properly remains imprisoned, he can have no legitimate expectation of finality in a sentence that, illegally, does not provide for his post-release supervision . . . ."[41]

But the same cannot be said for those defendants, like Vincent, who had served their judicially imposed determinate sentences and who had been released from custody, only to be re-incarcerated for violating the terms of their administratively imposed PRS. Annucci acknowledges that the New York Court of Appeals held in 2010 that resentencing after a defendant completed the lawful portion of his sentence and had been released from custody violates the Double Jeopardy Clause of the federal constitution.[42] But he insists that, at the time Vincent could have been resentenced, it was not clearly established that principles of double jeopardy prohibited obtaining resentencing for defendants who had been released.[43]

Therefore, Annucci asserts that, had he promptly referred Vincent for judicial resentencing after *Earley*, the state court would have likely imposed PRS *nunc pro tunc*. This assertion is without merit. Any hypothetical referral and resentencing would have taken

---

[40] *See Smith v. Wenderlich*, 826 F.3d 641, 651 (2d Cir. 2016).

[41] *Id.*; *see also People v. Brinson*, 972 N.Y.S.2d 182 (2013) (same).

[42] *People v. Williams*, 14 N.Y.3d 198, 217 (2010); *People v. Lingle*, 16 N.Y.3d 621, 629-30 (2010).

[43] Appellant's Supp. Br. 4-6; *see also King v. Cuomo*, 465 F. App'x 42, 45 (2012) (summary order).

place *after* DOCS had imprisoned Vincent for a PRS violation.[44] Implicit in Annucci's argument is the assumption that a court could retroactively ratify an incarceration that was based upon a null and void act by DOCS.  For defendants like Vincent, resentencing was not an available corrective measure for the simple reason that their incarceration was a consequence of an unconstitutional sentence that DOCS, not the *court*, had imposed.

While courts have inherent authority to correct their *own* errors,[45] the error here was not made by a court, but by DOCS. Because only courts can impose a valid sentence, the unconstitutional PRS term that Annucci imposed on Vincent was a "nullity" from its inception.[46]  *Earley* was clear that "any additional penalty added to th[e] sentence by another authority is invalid, regardless of its source, origin, or authority until the judge personally amends the sentence."[47] So, the consequences that flowed from the administratively imposed PRS—including Vincent's PRS-based incarceration—were likewise unauthorized and without legal effect.

Put differently, a defendant, like Vincent, who was incarcerated for violating the terms of an administratively imposed PRS could not have been resentenced *nunc pro tunc* for the simple reason that courts do not have the power to substantively rewrite history or backdate

---

[44] Recall that Vincent was already incarcerated based on a violation of a condition of PRS when this court clearly established that administratively imposed terms were null and void.

[45] N.Y. Crim. Proc. Law § 440.40; *see Campbell v. Pesce*, 60 N.Y.2d 165, 168 (1983).

[46] *Earley I*, 451 F.3d at 76.

[47] *Earley II*, 462 F.3d at 149.

events.[48]  "Incantation of Latin phrases does not bestow such an Orwellian power."[49]  *Nunc pro tunc* orders serve the limited purpose of correcting clerical errors in the record.[50]  But Vincent's record contained no such error; it correctly reflected that no PRS was imposed by a court—the only body that could legally impose it. Resentencing "for the imposition of PRS terms"[51] connotes amending the sentence to add PRS *in the first instance*.  Once a defendant serves his original sentence, however, a court cannot reverse the "error" and retroactively validate DOCS's *ultra vires* and unlawful imposition of PRS.[52]

Although resentencing may have been an option for certain defendants, it was not—as we clarify today—a viable avenue with respect to Vincent.[53]  The remaining option, as we outlined in *Earley*,

---

[48] Our decision in *Hassell v. Fischer*, 879 F.3d 41 (2d. Cir. 2018), is not incompatible with our observations about the unavailability of resentencing *nunc pro tunc* for defendants like Vincent, since Hassell was resentenced by the court and was not incarcerated for violating his administratively imposed PRS.  For that reason, we do not read *Hassell* to have addressed the implications of resentencing a person in Vincent's position.

[49] *Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995) (Easterbrook, J.).

[50] *See Gletzer v. Harris*, 12 N.Y.3d 468, 476 (2009) ("[N]unc pro tunc treatment, in general, is reserved for correcting irregularities in the entry of judicial mandates or like procedural errors." (internal quotation marks omitted)).

[51] *Vincent I*, 718 F.3d at 172.

[52] *Cf. Patterson*, 370 F.3d at 338 (acknowledging that applying proper procedures "at the present time" would be "unlikely" to "reverse any ill effects suffered by [the] plaintiff" in the interim).

[53] We express no opinion as to whether resentencing would have been possible for defendants who were conditionally released for good time

was to excise the terms of the null and void administratively imposed PRS and relieve Vincent of the conditions associated with it.[54] The only open question is whether DOCS needed court approval to eliminate the PRS term that it alone had imposed. At a minimum, Annucci was obligated to "at least attempt to cease [DOCS's] administrative and custodial operations that had been held to violate federal law."[55] And, as a state official, Annucci was not permitted to flout the Constitution or federal law, even if there were state laws to the contrary.[56] On the record before us, it is not clear whether there was any impediment, legal or otherwise, to Annucci's simply and unilaterally releasing Vincent.[57] Accordingly, on remand, we direct the district court to clarify that question, bearing in mind that the burden rests upon the plaintiff to establish the onset date for calculating any compensatory damages to which he may be entitled. If no such impediment existed, the plaintiff will have satisfied his burden upon the existing record. If an impediment is claimed, the

conduct but were still within the term of their judicially imposed determinate sentences or for defendants who had finished their determinate sentences and were serving administratively imposed PRS but were not incarcerated for violating PRS. We leave that determination for cases presenting those facts.

[54] *Vincent I*, 718 F.3d at 172.

[55] *Id.* at 172-73.

[56] U.S. Const. art. VI, cl. 2; *see Cooper v. Aaron*, 358 U.S. 1, 18 (1958).

[57] Annucci acknowledges that he "would have satisfied his obligation if he had somehow arranged the outright release of affected individuals." Appellant's Reply Br. 11 n.4. Ultimately, Annucci in June 2008 did request the sentencing judge to either resentence Vincent or to order his release. On remand, the district court should consider whether the release option in this case (if appropriate and whenever exercised) needed to be exercised through the state court, given that Vincent was being held in custody by DOCS based upon a PRS imposed by DOCS.

district court must determine its validity and effect, if any, upon the length of Vincent's unlawful incarceration.[58] The district court should conduct any additional fact-finding as may be required. Only then can the district court properly determine whether Vincent has carried his burden of proving the extent to which he is entitled to compensatory damages.

## CONCLUSION

For the foregoing reasons, we affirm in part and vacate in part the district court's decision, and remand for proceedings consistent with this opinion. The Clerk of Court is directed to refer this case to this panel in the event of any future appeal.

---

[58] We disagree with the dissent's assertion that "there was no genuine issue as to the lack of an impediment . . . . to Annucci's simply and unilaterally releasing Vincent." Diss. Op. at 7. Contrary to the dissent's reading of the record, Annucci never stipulated that he had the absolute discretion to immediately effectuate Vincent's release. Because there remains the possibility that Vincent would have been incarcerated for some period despite Annucci's best efforts to secure his release, there remains a question as to what harm Annucci's inaction caused Vincent. This question must be answered on remand.

KEARSE, *Circuit Judge*, dissenting:

I respectfully dissent from so much of the majority opinion as vacates the district court's award of compensatory damages to plaintiff Shawn Michael Vincent from defendant Anthony Annucci for unreasonably prolonging Vincent's unconstitutional reincarceration, in defiance of this Court's ruling in *Earley v. Murray*, 451 F.3d 71 (2d Cir.), ("*Earley I*" or "*Earley*"), *rehearing denied*, 462 F.3d 147 (2d Cir. 2006), that the administrative process that was the foundation for reincarceration was constitutionally unauthorized, null, and void. Vincent, after serving the entire sentence that was lawfully imposed on him by a state court, was arrested and reimprisoned twice for violations of postrelease supervision conditions ("PRS") that had been administratively imposed on him by the Department of Correctional Services ("DOCS") in violation of the United States Constitution. For those PRS violations--consisting of noncriminal conduct, *i.e.*, changing his address without informing his PRS parole officer in advance and possessing a credit card--he was imprisoned for a total of nearly two years. The district court found that 686 of those

days fell after *Earley* had been decided and become final; that it was appropriate to allow a 90-day period for Annucci to take action to comply with *Earley*; and that Vincent should therefore be compensated for a total of 596 days of his unconstitutional imprisonment.

Although we are unanimous in rejecting Annucci's renewed contention that he is entitled to qualified immunity from paying money damages for such violations--a contention definitively rejected in *Betances v. Fischer*, 837 F.3d 162 (2d Cir. 2016) ("*Betances*")--I am unable, for the reasons set out in Part A below, to see that the majority's decision to remand to the district court to determine whether there was "any impediment, legal or otherwise, to Annucci's simply and unilaterally releasing Vincent," Majority Opinion *ante* at 18, is reconcilable with the record in this case. As documented in Parts A and B below, the record includes Annucci's deposition admissions that whether "to either take action or not take action" to comply with *Earley* was his decision; that Annucci "deci[ded] not to follow [*Earley*'s] holding" and instructed DOCS personnel "not [to] follow [*Earley*]"; that Vincent spent 687 days imprisoned "[a]s the result of the unlawful imposition of post release supervision"; and that "Annucci acknowledged that . . . '*nothing prevented*' him from" "chang[ing] DOCS's policies and customs to conform with federal law," Majority Opinion *ante* at 9

- 2 -

(quoting *Betances*, 837 F.3d at 172 (emphasis mine)). The majority's suggestion that there may have been "any impediment" is contrary both to Annucci's acknowledgement that there was "nothing," and to his formal pleading in this action that his alleged conduct was within his "official . . . discretionary authority".

We are also unanimous that as a matter of law, Vincent could not constitutionally have been kept imprisoned after *Earley* by having him *resentenced* to PSR. *See* Majority Opinion *ante* at 5, 15-17. Thus, under *Earley*, DOCS was required to release Vincent from his unconstitutional reimprisonment. Given Annucci's claim that he had "discretion[]" to make the decisions he did and to follow the course of inaction he chose in disregard of *Earley* for some 14-19 months, and his acknowledgement that "nothing prevented" him from complying with *Earley*, the majority's remand--suggesting that Annucci may be excused from paying compensatory damages if it is determined that "Vincent would have been incarcerated for some period *despite Annucci's best efforts to secure his release*," Majority Opinion *ante* at 19 n.58 (emphasis added)--makes no sense to me. Any suggestion that Annucci used his best efforts to secure the release of any unconstitutionally imprisoned PRS violators is foreclosed by the ruling in *Betances*, 837 F.3d at 173, that Annucci's delay was "objectively unreasonable."

A.    *Annucci's Liability*

I am in agreement with most of the majority opinion describing prior liability-related rulings of this Court as to DOCS's unconstitutional policy and practice of administratively imposing PRS on certain prisoners whose judicially-imposed sentences did not include PRS, including *Earley I*, 451 F.3d 71 (holding that DOCS practice unconstitutional); *Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013)--the original name of the present case--(hereafter "*Vincent I*"); and *Betances*, 837 F.3d 162. Annucci "[a]t all times relevant to this matter" was DOCS's "Deputy Commissioner and Counsel," and "was responsible for DOCS legal services." (Joint Stipulations dated November 23, 2020, Facts Not in Dispute ("Stipulated Facts") ¶¶ 2-3.) In *Vincent I* we, *inter alia*, reversed a pretrial ruling that Annucci was entitled to qualified immunity as a matter of law. In *Betances*, in which Annucci was one of three defendants, we held, *inter alia*, that "because Annucci failed to make objectively reasonable efforts to comply with federal law that was clearly established by *Earley I*," he as a matter of law is "not entitled to qualified immunity," *see* Majority Opinion *ante* at 5 (citing *Betances*), and that partial summary judgment was properly granted against all three defendants on the issue of liability.

- 4 -

In the present case, there is no question that PRS was imposed on Vincent only by DOCS, not by a court; that after completing the entire five-year sentence that had been judicially imposed on him, Vincent was reincarcerated twice for "non-criminal violation[s] of the administratively imposed PRS" (Stipulated Facts ¶¶ 9, 13); that the total length of those reincarcerations totaled more than 1,000 days; and that most of those days were after *Earley I* had ruled DOCS's administrative impositions of PRS were null and void. The district court awarded Vincent compensatory damages after finding that Vincent's post-*Earley* reincarceration was prolonged by at least 596 days because of Annucci's refusal--for nearly two years after *Earley*, a deliberate delay we found objectively unreasonable, *see Betances*, 837 F.3d at 172-74--to take any action to remedy the effects of DOCS's unconstitutional impositions of PRS, including reincarcerations for violations of administratively imposed PRS. The majority vacates that award, holding that in order to be awarded compensatory, rather than nominal, damages against Annucci, Vincent needed to establish that there was no "impediment, legal or otherwise" to Annucci's compliance with the requirements of *Earley*. In my view, the record in this case does not show a genuine issue as to the existence of any such impediment.

As the majority indicates, *Earley* required that DOCS-imposed PRS be "'excise[d]'" and the affected persons be "'relieve[d] . . . of those conditions,'" but it left room for the state instead, if a procedure was available, to seek to have those persons "'resentenced by the court for the imposition of PRS terms in a *constitutional* manner.'" Majority Opinion *ante* at 14 (quoting *Vincent I*, 718 F.3d at 172 (discussing *Earley*) (emphasis in Majority Opinion)); *see Earley I*, 451 F.3d at 76-77 (DOCS's administrative impositions of PRS were "a nullity"). However, only the excision alternative could properly be used for Vincent, because he had completed service of his judicially imposed sentence in 2005. As indicated in the Majority Opinion *ante* at 5, 15-17, resentencing Vincent thereafter to impose PRS would have been barred by principles of double jeopardy. *See*, *e.g.*, *Hudson v. United States*, 522 U.S. 93, 99 (1997) (the Double Jeopardy Clause of the United States Constitution protects against "the imposition of multiple *criminal* punishments for the same offense" in successive proceedings (emphasis in original)). Accordingly, to remedy its unconstitutional reincarceration of Vincent, DOCS was required to excise PRS from his record, relieve him of PRS conditions, and end his reincarceration.

A claimant has the burden of proving all elements of his claim, including causation. The majority holds that in order to show that the prolongation of his

unconstitutional reincarceration was caused by Annucci's delay in complying with *Earley*, Vincent was required to show that there was no "impediment, legal or otherwise, to Annucci's simply and unilaterally releasing Vincent." Majority Opinion *ante* at 18. I regard the record as to Annucci's actions and inactions after *Earley*, and Annucci's admissions concerning DOCS's practice and policy with respect to its administrative imposition of PRS as sufficient to show that there was no such impediment and that there was no genuine issue as to the lack of an impediment.

In affirming partial summary judgment against the three defendants in *Betances*, we noted that Annucci, who was at all relevant times responsible for DOCS's legal affairs, and defendant Brian Fischer, who became DOCS's Commissioner in January 2007, were the DOCS officials "who were responsible for designing and implementing their department['s] response to *Earley I*." *Betances*, 837 F.3d at 167. There was no lack of knowledge on their part--or on the part of the third defendant Terence Tracy, chief counsel for the New York State Division of Parole ("DOP") in 1996-2011, *see, e.g., id.* at 168--as to the import of *Earley*'s holding that DOCS's administrative imposition of PRS was unconstitutional. "All three [defendants] confirmed that . . . they understood that *Earley I* required them to change their

practices"; they admitted that they "affirmatively decided not to do so," and that "their noncompliance was not the result of oversight or confusion."  *Id*. at 172.

For example, as we noted in *Vincent I*, Annucci had admitted in another case that he knew of, but simply disagreed with, *Earley I*:

> Q  *You were aware of the Second Circuit's decision in Earley v. Murray at the time it came out in 2006.  Correct*?
>
> A  *Correct*.
>
> Q  I would assume you did not agree with that decision?
>
> A  I think that is a safe assumption.
>
> . . . .
>
> Q  *And you were aware that the Second Circuit indicated that DOCS did not have the authority to add a period of post-release supervision, if it was not included by the sentencing judge*?
>
> A  *That is correct*.

*Vincent I*, 718 F.3d at 168-69 (internal quotation marks omitted (emphases in *Vincent I*)).  In the same case, "Annucci testified that, 'at that time in 2006' he '*did not* begin a resentencing initiative.'"  *Id*. at 173 (emphasis *Vincent I*).  "Annucci immediately understood *Earley I*'s holding but deliberately refused to change DOCS procedures to bring them into compliance."  *Betances*, 837 F.3d at 167.

- 8 -

Instead, "[i]n August 2006, Annucci emailed DOCS personnel to inform them that *Earley I* conflicted with New York state law and *that DOCS would not follow its holding*." *Id.* (emphasis added).  He testified as follows in his deposition in *Betances*:

> Q:  You[] read [*Earley I*], you made decisions about policy for DOCS based on that opinion, right?
>
> A:  I didn't make any decisions to change policy.
>
> Q:  Right, *you made a decision to either take action or not take action after Earley*, right?
>
> A:  *Correct*.
>
> Q:  You made the decision to take action in notifying the courts to deal with the problem prospectively?
>
> A:  Correct.
>
> Q:  *You made the decision not to take any action retroactively until further notice, right*?
>
> A:  *Correct*.
>
> Q:  And *you made the decision to take **no** action prospectively . . . to conform DOCS policy and conduct to the holding of Earley* as well, right?
>
> . . . .
>
> A:  *Correct*.

*Id.* at 167 (quoting Annucci Dep. 87:11-88:7 (emphases mine)).

Fischer, who became DOCS's Commissioner several months after Annucci made those decisions, testified that he too "understood *Earley I*'s holding," and that he "*agreed with Annucci's decision not to follow its holding*." *Betances*, 837 F.3d at 167 (emphasis added). He testified that "'the decision to continue basically enforcing th[e] policy [of administratively adding PRS to inmates' sentences] notwithstanding *Earley*'" was "'an operational decision,'" and that

> it "was our position" "that inmates would continue to get post-release supervision, be subjected to it upon release, be reincarcerated for violating post-release supervision going forward, notwithstanding the fact that the Second Circuit Court of Appeals had made it clear that that violated the federal constitutional right to due process."

*Betances*, 837 F.3d at 167 (quoting Fischer Dep. 40:12-41:14 (emphases mine)).

And indeed DOCS did continue to reincarcerate people for violating conditions of DOCS-imposed PRS. Vincent in April 2007, nearly a year after *Earley I*'s June 2006 ruling that such impositions of PRS were null and void, was reincarcerated for violating a term of PRS, to wit, for moving to a new address without informing his parole officer beforehand. *See also Vincent I*, 718 F.3d at 175-76 (noting that other plaintiffs in this action or in consolidated appeals complained of being reincarcerated for PRS violations in June 2007, July 2007, October 2007, and June 2008).

- 10 -

In April 2008, the New York Court of Appeals held that if PRS is to be imposed, New York State law requires that it be pronounced orally by the judge at sentencing. That Court "did not address whether the Constitution required sentencing judges to pronounce PRS terms, as we had held in *Earley I*." *Betances*, 837 F.3d at 166. Thereafter, DOCS took its first significant steps toward compliance with *Earley I*. It reviewed files that it had collected earlier but had "d[one] nothing with," *id.* at 169, and concluded that there were approximately 8,100 inmates on whom DOCS had administratively imposed PRS, some 6,300 of whom were still incarcerated.

In June 2008, "DOCS and DOP filed a declaratory judgment action in state court seeking judicial approval of a plan that would permit state agencies, district attorneys, and state courts to systematically identify and refer improperly sentenced inmates back to the sentencing courts to be resentenced. *The state court, however, did not grant the injunctive relief sought by DOCS and DOP*." *Id.* at 170 (emphasis added). Also in June 2008, DOCS sent a form letter to the judge who had sentenced Vincent in 2001, advising the judge that DOCS records did not show that the court had imposed a PRS term. DOCS requested that the judge either hold a hearing to determine whether to resentence Vincent to PRS or direct DOCS to release

him. In my view, that suggestion that Vincent be resentenced to a term of PRS did not comply with *Earley*. As the majority agrees, a resentencing for Vincent, who had completed service of the sentence judicially imposed in 2001, was not constitutionally available. Thus, resentencing Vincent as Annucci suggested would merely have converted his reincarceration from a due process violation to a double jeopardy violation.

And indeed, the judge who had sentenced Vincent neither sought to resentence him nor took any other action. He sent a letter stating that his records confirmed that he had not imposed a PRS term; he sent his letter only to Vincent; and it ended by saying, "I hope this letter assists you in your efforts." (JA.107.) But DOCS did not take any action to excise PRS from Vincent's record and release him. He remained reincarcerated for his 2007 violation of DOCS-imposed PRS until a state court granted his petition for habeas corpus in July 2008.

The majority, while concluding that Vincent could not be resentenced to PRS, speculates that even if Annucci had not unreasonably delayed in taking action to have DOCS comply with *Earley*, Vincent might have remained reincarcerated because of some "legal or other[]" impediment to Annucci's ordering that DOCS excise the PRS and ordering that Vincent be released. It vacates the award of

- 12 -

compensatory damages to Vincent, ruling that he is entitled only to nominal damages unless he shows that there was no "impediment, legal or otherwise, to Annucci's simply and unilaterally releasing" him, Majority Opinion *ante* at 18. But as I read the record, *the absence* of any such impediment *is not genuinely disputed*.

B. *The Lack of a Genuine Issue as to Annucci's Authority*

First, I note the lack of a dispute as to the unconstitutionality of Vincent's reincarceration. Paragraph 19 of Vincent's Rule 56.1 statement in support of his motion for summary judgment asserted that

> *[a]s the result of the unlawful imposition of post release supervision*, [Vincent] spent a total of 1,015 days deprivation of his liberty,

and Annucci's response was:

> *Response*: Admit in part that Mr. Vincent was discharged on July 31, 2008 however, *dispute the number of days of DOCS incarceration*, to wit: August 29, 2006 through March 21, 2007 (204 days) and April 5, 2007 through July 31, 2008 (483 days).

(JA.312 (citations omitted) (emphases added).) Thus, Annucci disputed only the number of days Vincent was reincarcerated. He did not dispute that--for the admitted total--Vincent's reincarceration for those days was "the result of the unlawful imposition of" PRS.

- 13 -

Second, in this action seeking, *inter alia*, compensatory damages for Annucci's unconstitutionally prolonging Vincent's imprisonment, Annucci asserted he acted in accordance with his own official discretion. This was not a casual statement by Annucci in an informal setting, or an argument suggesting that Vincent needed to present evidence that Annucci *could* have released him earlier. Annucci--represented by the Attorney General of the State of New York--stated in his Answer to the operative complaint that his "alleged conduct was properly *within the discretionary authority* committed to [him] to perform his official functions," and that "the relief prayed for would constitute an improper intrusion into said *discretionary* authority." (Annucci Answer, Fourth Affirmative Defense (emphases added).) A party's assertion of fact in a pleading is a judicial admission by which he normally is bound throughout the course of the proceeding. *See, e.g., Bellefonte Re Insurance Co. v. Argonaut Insurance Co.*, 757 F.2d 523, 528 (2d Cir. 1985).

And consistent with Annucci's judicial admission that prolonging Vincent's reincarceration was "within [his] discretionary authority," the majority notes that "Annucci acknowledged that he understood that *Earley* required him to change DOCS's policies and customs to conform with federal law[ and] that *'nothing*

- 14 -

*prevented' him* from doing so," Majority Opinion *ante* at 9 (quoting *Betances*, 837 F.3d at 172 (emphasis mine)).

In sum, I cannot agree that the record is consistent with the majority's remand suggesting "the possibility" that Annucci could be excused from paying compensatory damages on the hypothesis that he exercised his "best efforts" to have Vincent released earlier, Majority Opinion *ante* at 19 n.58. Annucci delayed 14-19 months before taking any action required by *Earley* to relieve anyone of reimprisonment for violations of PRS that DOCS had unconstitutionally imposed; he acknowledged that "nothing prevented" him from acting to comply with *Earley* earlier; he pleaded unqualifiedly that he had "discretion[]" to act as he did; and we held in *Betances* that his delay was "objectively unreasonable."

Accordingly, I dissent from the remand.